774 F.2d 188
 54 USLW 2193
 Coad MILLER, Individually and on behalf of himself, and in a
representative capacity on behalf of a class of
persons similarly situated, Plaintiff- Appellee,
v.
CITY OF CHICAGO, et al., Defendants-Appellees,
and
Merit Insurance Company, et al., Intervening Petitioners-Appellants.
Coad MILLER, Individually and on behalf of himself, and in a
representative capacity on behalf of a class of
persons similarly situated, Plaintiff- Appellee,
v.
CITY OF CHICAGO, et al., Defendants-Appellants.
Coad MILLER, Individually and on behalf of himself, and in a
representative capacity on behalf of a class of
persons similarly situated, Plaintiff- Appellant,
v.
CITY OF CHICAGO, a municipal corporation, and John Does, One
through Five, employees, agents and towing
contractors, Defendants-Appellees.
 Nos. 84-2329, 84-2614 and 84-2640.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 6, 1985.
Decided Sept. 24, 1985.
Rehearing and Rehearing En Banc Denied Nov. 18, 1985.
 
 Mary K. Rochford, Corp. Counsel, Chicago, Ill., for City of Chicago.
 Marshall Patner, Orlikoff, Flamm & Patner, Chicago, Ill., for Miller.
 Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and WRIGHT, Senior Circuit Judge.*
 CUMMINGS, Chief Judge.
 
 
 1
 This appeal involves a certified class action brought under 42 U.S.C. Sec. 1983 against the City of Chicago and certain individuals challenging the constitutionality of the City's procedures for towing recovered stolen automobiles and seeking reimbursement to class members for towing and storage charges assessed against them by the City. The only named plaintiff, Coad Miller, owned a 1973 Volkswagen that was stolen on November 5, 1981, found by two Chicago police officers and towed to a city pound. Plaintiff was notified by mail that the vehicle was recovered and paid defendant City of Chicago a $45 towing charge and a $5 one-day storage charge to recover his car. He did not request a hearing to contest the charges. The five individual John Doe defendants are the two police officers who recovered plaintiff's car and three others who caused the car to be towed to the pound. The relief requested was an order preserving certain municipal records concerning stolen cars, class certification, a declaratory judgment and injunction as to the City's procedures for towing stolen cars and the establishment of a fund to reimburse class members for towing and storage charges and to provide for attorney's fees and costs.
 
 
 2
 The district court in a November 22, 1983, memorandum opinion concluded that the City's practice of towing recovered stolen vehicles without prior notice to owners violated the due process clause of the Fourteenth Amendment and granted plaintiff's cross-motion for summary judgment (R. Item 29).[1] Defendant City of Chicago, whose cross-motion for summary judgment was denied, and amici curiae (see infra note 2) argue that pre-tow notice and hearing are not constitutionally required under these circumstances and that the City's post-tow notice and hearing procedures satisfy the requirements of due process. For the reasons set forth below, the judgment of the district court declaring the procedures and practices of the City relating to the immediate towing of recovered stolen vehicles unconstitutional and enjoining the City from towing and storing such vehicles without prior owner approval for towing or storage is reversed.
 
 
 3
 * The City of Chicago's procedures regarding the recovery of stolen vehicles are set forth in Section 27-367 of the Municipal Code of Chicago and in an internal Chicago Police Department document, Chicago Police Department General Order 75-5. General Order 75-5 requires the immediate towing of certain classes of vehicles, including vehicles that have been reported stolen where the vehicle's owner is not present at the location of the recovery (R. Item 29). The Order also requires police personnel of the Automotive Pound Section Headquarters to "prepare and mail a notice * * * to vehicle owners, advising them of the towing and the hearing" (id.). Section 27-367 of the Municipal Code of Chicago states that the owner of a legally impounded vehicle may obtain immediate possession thereof by furnishing evidence of identity and ownership and paying a towing fee of forty-five dollars (sixty-seven dollars for trucks and commercial vehicles) and storage costs of five dollars per day. Payment of these charges may be challenged, however, pursuant to Section 27-367, by means of 1) requesting a hearing to be held within twenty-four hours at which the validity of the tow may be contested (i.e., here whether the car was in fact reported stolen) or 2) securing immediate possession of the vehicle by depositing twenty-five dollars with the police and requesting a hearing to be held within seven days at which the validity of the tow may be contested. (Municipal Code of Chicago, Sec. 27-367, R. Item 1, Exhibit A). The notice sent plaintiff Miller stated:
 
 
 4
 You are entitled to additional information regarding the reason for this tow, whether the vehicle can be immediately released and whether it is subject to charges. You are also entitled to a hearing, if you desire, to determine the validity of the tow or extended hold of your vehicle and any towing or storage charges (Br. 7; R. Item 16, Attachment F).
 
 
 5
 The notice also informed plaintiff how the hearing could be arranged.
 
 
 6
 Illinois law empowers police officers "to remove or cause to be removed to the nearest garage or other place of safety any vehicle" which has been reported "stolen or taken without the consent of its owner." ILL.REV.STAT. ch. 95 1/2, Sec. 11-1302 (1983). Additionally, ILL.REV.STAT. ch. 95 1/2, Sec. 4-202 (1983), provides that when municipal police receive notification of a stolen vehicle they "will authorize a towing service to remove and take possession of the * * * stolen * * * vehicle."
 
 
 7
 As summarized, supra, on March 15, 1982, plaintiff Miller filed a complaint with the United States District Court for the Northern District of Illinois requesting that the towing provisions set forth in the Municipal Code of Chicago and the Police Department Order be declared unconstitutional, that the City be enjoined from enforcing the provisions, and that a fund be established from which the suggested class of plaintiffs could recover towing and storage charges assessed within the relevant statute of limitations period. In a November 18, 1983, memorandum opinion the district court certified the class action and granted plaintiffs' motion for summary judgment, ruling that the defendants' procedures for towing stolen automobiles were unconstitutional because pre-tow notice was not provided to owners of stolen vehicles. Miller v. Chicago, No. 82 C 1607 (N.D.Ill. Nov. 18, 1983) (R. Item 29). In its second memorandum opinion the district court redefined the class, required notice by mail to the class members, directed the City to submit revised proposals for Vehicle Theft Report Forms and Recovery Procedures, and acknowledged receipt of the City's proposed Claims Procedure (R. Item 49). The final judgment order in the case was entered on August 22, 1984, and enjoined the defendants from towing recovered stolen vehicles without prior notice, required the City to provide notice of the class action to plaintiff class, and set forth a system for recovery of towing and storage charges (App. 3). On appeal defendants challenge the district court's ruling on the constitutionality of the towing procedures, the inclusion of certain persons in the plaintiff class and the award of retroactive relief. Four insurers[2] and the National Automobile Theft Bureau, Inc. have filed a brief amici curiae urging reversal of the judgment.
 
 II
 
 8
 The constitutional question presented by this case is whether the defendants' procedures of towing stolen vehicles without giving prior notice to the vehicle owner constitute a deprivation of property without due process of law in violation of the Fourteenth Amendment. Defendants concede that the towing of a recovered vehicle reported stolen amounts to a temporary deprivation of property (Br. 16). Both parties agree that the property interest at issue here is the use of a vehicle (Br. 16; R. Item 19). See Sutton v. Milwaukee, 672 F.2d 644, 646 (7th Cir.1982). In the district court plaintiff attacked the City's procedures on the basis of their failure to provide for pre-tow or pre-deprivation notice (R. Item 19, at pp. 2, 5-6, Memorandum in Support of Plaintiffs' Cross Motion for Summary Judgment).[3] He asserts that the City should provide an opportunity to owners of located stolen vehicles to recover their own property and thereby avoid payment of towing and storage costs (id.). No pre-deprivation hearing is requested in the complaint (R. Item 1 at pp. 5-6) or on appeal (Pltf. Br. 23-24) and, indeed, one would serve no purpose under these circumstances where such a hearing would not appear to hasten the return of the recovered stolen vehicle to its owner and where pre-tow notice itself may preempt the deprivation of property.
 
 
 9
 The Supreme Court has often asserted that the requirement of due process "is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484; see United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency, 461 U.S. 555, 564, 103 S.Ct. 2005, 2012, 76 L.Ed.2d 143; Schweiker v. McClure, 456 U.S. 188, 200, 102 S.Ct. 1665, 1672, 72 L.Ed.2d 1. In Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, the Court specifically considered in which situations due process requires notice and a hearing prior to a deprivation of property. In answering this question in the negative where benefits were terminated subject to later notice and hearing Mathews offered a three-part standard for resolution of the issue. The inquiry requires consideration of 1) "the private interest that will be affected by the official action," id., including "the importance of the private interest and the length or finality of the deprivation," Logan v. Zimmerman Brush Co., 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265; see Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 19, 98 S.Ct. 1554, 1565, 56 L.Ed.2d 30; 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value * * * of additional or substitute procedural safeguards," Mathews, 424 U.S. at 335, 96 S.Ct. 903; and 3) "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute proceedings would entail." Id. These factors must be balanced in some manner, see Sutton, 672 F.2d at 645-646, but Mathews gives no indication as to the relative weight properly accorded each. It is of some help to apply the Mathews tripartite test in light of the general rule, recently reiterated by the Supreme Court, that "absent an 'extraordinary situation' the power of the state to seize a person's property may not be invoked without prior notice and an opportunity to be heard." United States v. $8,850, 461 U.S. at 562 n. 12, 103 S.Ct. at 2011, n. 12; see Fuentes v. Shevin, 407 U.S. 67, 90, 90 n. 22, 92 S.Ct. 1983, 1999, n. 22, 32 L.Ed.2d 556; Boddie v. Connecticut, 401 U.S. 371, 378-379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113; Breath v. Cronvich, 729 F.2d 1006, 1010 (5th Cir.1984), certiorari denied, --- U.S. ----, 105 S.Ct. 332, 83 L.Ed.2d 268; but cf. Sutton, 672 F.2d at 647 (questioning the continued validity of the "extraordinary situation" rule stated in Fuentes, supra ). Thus pre-deprivation notice and hearing represent the norm and the state must forward important reasons to justify a departure therefrom.
 
 
 10
 In Fuentes the Court clarified what constituted an extraordinary situation obviating the need for pre-deprivation notice and hearing. It noted that in each case where the Court had allowed such seizures, the following three factors had been present:
 
 
 11
 First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.
 
 
 12
 407 U.S. at 91, 92 S.Ct. at 2000; see Breath, 729 F.2d at 1010. In this case plaintiff sought only pre-deprivation notice but not a hearing (R. Item 19). Nevertheless the defendants' procedures must be scrutinized under a standard as strict as that set forth in Mathews. In view of the fact that provision of pre-deprivation notice would be as injurious to the City's interest as pre-deprivation notice and hearing were to the government interest in the Supreme Court cases sanctioning deprivations without predeprivation notice and hearing, see infra pp. 193-194, the City's policy need not be analyzed under a more restrictive test. Application of the Mathews standard, in light of the three factors set forth in Fuentes, reveals that defendants are not constitutionally required to provide pre-deprivation notice in this situation.
 
 III
 
 13
 The property interest involved here is not of prime significance for the impounding of stolen cars is temporary. But of course the use of one's automobile is certainly an important interest, and deprivation of it for more than a brief period could interfere severely with "[a] person's ability to make a living and his access to both the necessities and amenities of life." Stypmann v. San Francisco, 557 F.2d 1338, 1342-1343 (9th Cir.1977). The length of the deprivation caused by the City's present procedures would appear to be a few days (the time required for preparing, mailing and arrival of written post-tow notice and if no deposit is made a maximum additional 24 hours, see supra pp. 189-190)--but still a period longer than the "few hours" at issue in Sutton, 672 F.2d at 646, and the forty-eight hours involved in Goichman v. Rheuban Motors, Inc., 682 F.2d 1320, 1324 (9th Cir.1982) (city's post-seizure hearing following towing of vehicles satisfies due process requirements). Such a detention is certainly an annoyance. See Stypmann, 557 F.2d at 1344 ("days, even hours, of unnecessary delay [in returning automobile] may impose onerous burdens upon a person deprived of his vehicle").[4]
 
 
 14
 The degree of importance attached to the property interest in this situation is attenuated, however, by the fact that in a very real sense it is not the City that has caused the vehicle owner's deprivation, but rather the thief of the vehicle. Unlike the instances involving municipal or state towing of illegally parked and abandoned automobiles, here the government is only reacting to a prior private deprivation of property and attempting to carry out its obligation to protect the public. It is not the sole and initial force coming between the owner and his or her vehicle. Indeed these circumstances may be viewed as involving no municipal deprivation at all in the sense that if the City had not acted responsibly in discovering the stolen vehicle, the privately caused deprivation would simply continue (excluding the unlikely possibility that an owner might come upon the stolen vehicle by himself), and it is therefore unfair to view the time expended in returning the recovered vehicle as a true deprivation since without the City's efforts the private deprivation almost assuredly would have continued. On the other hand, since plaintiff argues that there is no need for the police to take custody of these vehicles in the first instance (Pltf. Br. 10) and since defendants concede that the towing is a slight deprivation (Br. 16), for purposes of Mathews analysis the private interest here will be treated as significant but not great.
 
 
 15
 The risk of government error here is extremely slight. The determination that a particular vehicle has been reported stolen is a "cut and dried" one, Sutton, 672 F.2d at 646, much like the determination of a parking violation in Sutton, and unlike the determination of whether a car has been abandoned where the subjective intent of the owner is at issue. See Tedeschi v. Blackwood, 410 F.Supp. 34, 45 (D.Conn.1976). Here not only does the owner himself provide the information necessary to make the determination of theft, but Police Department General Order 75-5 requires an officer to check with police headquarters to confirm the status of the vehicle according to the license or registration number (R. Item 1, Exhibit B).
 
 
 16
 The pre-tow notice originally requested in this case could prevent the removal of a vehicle that has already been recovered by the owner or which remains erroneously listed as reported stolen, just as a hearing could, but the likelihood of such errors is small and plaintiff has not argued for pre-tow notice on the basis that it will prevent erroneous deprivations. The principal value of the district court's proposed additional safeguards here, namely, pre-tow notice that would permit the vehicle owner to remove the auto himself, would spare the owner the cost of towing and storage charges and of course would provide him with immediate possession of the vehicle. Since the towing and storage charges are ordinarily covered by standard auto insurance policies (see infra note 5), the only benefit that would normally result from pre-tow notice is earlier possession of the car.
 
 
 17
 But the municipal government has a substantial interest in promoting the public welfare and safety by the prompt removal of stolen vehicles to a safe place, an interest wholly apart from its interest in returning the vehicle to its owner. Specifically, the speedy removal of discovered stolen vehicles promotes the City's interests in terminating the thief's illegal possession of the vehicle, preventing the illegal use of the vehicle by the thief or other unauthorized person (perhaps in other crimes), preventing the illegal sale of the vehicle or its dissection for removal of parts, and preventing the operation of the vehicle in a hazardous manner (Br. 17; Amici Br. 4-7). In summary, stolen vehicles pose special dangers to the public and the City or state has a legitimate interest in dealing with those hazards. The district court consequently erred in its analysis by according absolutely no weight to this interest independent of the City's obligation to facilitate the return of these vehicles.
 
 
 18
 The district court rejected the defendants' claim that recovered stolen cars necessitate their quick action in every case by analogizing and finding indistinguishable cases involving abandoned or illegally parked vehicles where prior notice and hearing requirements may be dispensed with only if the particular vehicle poses an actual danger to traffic or other menace (11/18/83 Order at 11, R. Item 29). This analogy is inapt because of the inherent concerns that exist with respect to a recently discovered stolen vehicle. Whereas the need for immediate action can be determined on the spot where the only concern is danger or inconvenience to traffic or pedestrians as is the case with abandoned or illegally parked cars, each stolen vehicle presents potential dangers or concerns that are not immediately ascertainable by police officers. For example, the thief or subsequent possessor may return to the vehicle and remove it at any time for further illicit and dangerous use. It is possible that the stolen vehicle has been abandoned, but that fact will not often be readily apparent. Moreover, each stolen vehicle has been the object of a felony. Thus ascertaining the best means of returning a recovered stolen vehicle to its owner is not the sole issue in this case and certainly police officers cannot discount the possible need for immediate action at the scene of recovery. To the extent the district court's statement that stolen vehicles involve no more immediate concerns than do abandoned or other types of vehicles represents a finding of fact, such a finding is clearly erroneous.
 
 
 19
 In view of the above-outlined City interests the feasibility and actual value of Judge Hart's proposed pre-tow notice must be seriously questioned. The district judge concluded that "[i]t would require no more effort for the City to contact owners upon recovery to ascertain whether they would prefer to retrieve their vehicles themselves or have the city tow and store them" than the City's "current practice" of post-recovery notice and a hearing (11/18/83 Order at 13, R. Item 29). This observation plainly ignores the reality of the situation and the City's legitimate independent interest in securing the vehicle. The system envisioned by plaintiff would require notice via telephone by police officials immediately after confirmation of a requested stolen vehicle check by officers in the field, for pre-tow written notice would not lessen the period of deprivation of the property interest. It is said that stolen vehicle owners could indicate their desire to receive telephone notice on their stolen vehicle report which also contains the owner's home and work telephone numbers (id. at 3). In light of the City's legitimate independent interest in securing the stolen vehicle, this procedure of phone notice would require the police to remain at the site of the discovered stolen vehicle until the owner could be contacted, could reveal whether he could retrieve the vehicle promptly, and when he might actually arrive to recover it. If the auto or truck turned out not to be functional after the owner's arrival, more police time would be consumed. Moreover, as amici curiae observe, if plaintiff's proposals were put in effect, the City could not even tow stolen vehicles until after a seven-day waiting period (Amici Br. 8). This extended use of police time invariably would involve consumption of more police time than the present system utilizing a towing service regularly engaged in this type of activity and able to remove vehicles whether they are functional or not. Because of the uncontested reliability of the towing service under the current system, the police could leave the scene prior to the arrival of the tow truck, knowing the stolen vehicle shortly would be removed. These considerations highlight the administrative burden of instituting the phone notice system which would have to deal with the approximately 22,000 stolen vehicles recovered annually in the City (Br. 19).
 
 
 20
 The actual value of the district court's additional proposed safeguards must be reassessed in light of the City's independent interest in the prompt securing of these vehicles. Accepting the undenied premise that the police cannot allow the recovered vehicles to remain on the streets for hours or days, the benefits of the phone notice system (possibly immediate possession without towing charges) would only accrue to those car owners who could be contacted upon the discovery of the stolen vehicle and who further would be able to recover the vehicle immediately. Thus, for at least a substantial portion of the stolen vehicle owners, perhaps most of them, the additional procedure would be of no value.
 
 
 21
 Finally, this case involves all three of the factors listed in Fuentes as characteristics of the extraordinary circumstances under which pre-deprivation notice and hearing are not constitutionally necessary. The seizure here is directly necessary to secure an important public purpose, there is a need for prompt action, and the seizures are initiated through municipal officials responsible for determining the necessity of the seizure pursuant to narrow legislative standards. See supra p. 192.
 
 
 22
 Consideration of the three-part Mathews inquiry demonstrates that this is an unusual situation where pre-deprivation notice and hearing are not required. Thus the securing of recently discovered stolen automobiles implements a number of important governmental and public interests. The additional safeguards would impose a substantial burden on the state in terms of redirecting use of law enforcement manpower to accommodate an individual owner's interests. The significant value of the additional safeguards is greatly reduced by the mere fact that many if not most of the affected individuals in practice will not be able to avail themselves of the proposed pre-tow notice to collect their cars before they are towed. The important private interest affected by the defendants' actions in the use of one's vehicle is also significantly attenuated since the City is not the sole or even primary person responsible for the deprivation of property and indeed is responsible for ending any private party deprivation. In summary, the important government interests here would be greatly hindered by additional procedural safeguards of limited benefit in protecting an amorphous and elusive private interest. The fact that other cities may have instituted a phone notice system similar to the one advocated by plaintiff, thus allowing owners of recovered stolen vehicles an opportunity to retrieve their own vehicles, is not dispositive here; while the institution of such procedures may be laudable, the Constitution does not require them.
 
 
 23
 Plaintiff appears to argue that cases requiring pre-tow notice and hearing with respect to abandoned cars are indistinguishable from the present situation and that the only basis for distinguishing our decision in Sutton (permitting a city to tow illegally parked vehicles without prior notice and hearing) from the abandoned car cases requiring pre-deprivation notice and hearing, see, e.g., Tedeschi, supra; Graff v. Nicholl, 370 F.Supp. 974 (N.D.Ill.1974), is that the plaintiffs in Sutton had violated the law. Consequently, plaintiff argues that since he has violated no law, pre-tow notice must also be required here. Although it may be unfortunate that the defendants' procedures require vehicle owners to "ante up" to recover their stolen vehicles until reimbursed under standard insurance policies,[5] the plaintiff's argument must fail for two reasons. First, Sutton solely and expressly distinguished the abandoned car cases on the basis that prior notice was "infeasible in the case of an illegally parked car; the car will be gone by the time the owner is notified." 672 F.2d at 647. Second, not only is there the problem of infeasibility of pre-tow notice as there was in Sutton, see supra p. 193, but as pointed out previously, there is a substantial basis for distinguishing abandoned cars from recently recovered stolen vehicles. See supra pp. 192-193. It is these differences that prompt today's decision.
 
 IV
 
 24
 Plaintiff devotes a major portion of his brief to the argument that the defendants' procedures are invalid because the recovery of stolen vehicles is part of "the general work of the police department" and a city may not charge individuals for such municipal services (Pltf. Br. 13-16). This assertion was presented below, but the district court did not rest its constitutional ruling on that argument (see 11/18/83 Order, R. Item 29). The gravamen of plaintiff's contention is that the class should not have to pay for towing and storage costs under any circumstances. He suggests institution of post-tow procedures whereby owners of recovered stolen vehicles could show they had violated no statute and could obtain a waiver of payment of towing and storage fees (Complaint p 13, R. Item 1; Memorandum in Support of Plaintiff's Cross Motion for Summary Judgment at 2 (R. Item 19)). The claim is not stated in terms of due process, but the Fourteenth Amendment appears to be the only basis for such an attack. Statutes may of course be challenged on the basis that they are wholly arbitrary or irrational in purpose or means. See Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 82-84, 98 S.Ct. 2620, 2635-2636, 57 L.Ed.2d 595; Beller v. Middendorf, 632 F.2d 788, 807 (9th Cir.1980), certiorari denied, 454 U.S. 855, 102 S.Ct. 304, 70 L.Ed.2d 150; Rogin v. Bensalem Township, 616 F.2d 680, 689 (3d Cir.1980), certiorari denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223. However, the towing and storage fees charged by defendants were authorized by Illinois law, ILL.REV.STAT. ch. 95 1/2, Sec. 4-203 (1983) ("When a vehicle removal from either public or private property is authorized by a law enforcement agency, the owner of the vehicle will be responsible for all towing costs"), as well as by the Municipal Code of Chicago, Section 27-367, and Police Department General Order 75-5. This Court can discover nothing arbitrary or irrational about these provisions allowing the City to assess the cost of this particularized service directly against the recipient of the service. To the extent plaintiff's turn-of-the-century Illinois cases are relevant here, see Koy v. Chicago, 263 Ill. 122, 104 N.E. 1104 (1914); City of Chicago v. Weber, 246 Ill. 304, 92 N.E. 859 (1910); Village of Lemont v. Jenks, 197 Ill. 363, 64 N.E. 362 (1902), they are distinguishable in that the City is not attempting to place "a purely public burden," Koy, 263 Ill. at 129, 104 N.E. at 1106, such as the cost of health inspectors or firefighters, upon individual citizens.
 
 V
 
 25
 Because plaintiff appears to have limited his attack on the City's vehicle recovery procedures to their failure to provide pre-tow notice, apart from denying a vehicle owner's obligation to pay these charges at all, see supra p. 190, it would be improper for us to rule on the adequacy of the city's post-tow procedures of notice and hearing. The issue was not fully developed below. For example, it is not clear how much time expires between the initial tow and the provision of a hearing under the existing procedures. See supra p. 192; Goichman, 682 F.2d at 1324 (forty-eight-hour delay in providing postdeprivation hearing sanctioned); Stypmann, 557 F.2d at 1344 (five-day delay invalid). The procedures do provide more than the "meaningless formality" suggested by the district court (11/18/83 Order at 11, R. Item 29) in that they allow the owner to contest whether the vehicle towed was in fact one that was and remained reported stolen. The fact that the police may rarely err in carrying out their duties vis-a-vis stolen cars is not a valid basis for terming a post-tow hearing meaningless. It is also noteworthy that the defendants provide owners of the stolen vehicles with an opportunity to obtain release of the vehicle by making a deposit of $25, an amount less than the towing and storage charges, a procedure ruled constitutionally unnecessary by the Ninth Circuit. See Goichman, 682 F.2d at 1325.
 
 
 26
 In view of our holding that the City is not constitutionally required to give pre-tow notice nor prohibited from assessing towing costs upon individual vehicle owners, it is unnecessary to address plaintiff's and defendants' arguments concerning the composition of the plaintiff class mandated below and defendants' argument concerning the propriety of awarding retrospective reimbursement relief, also awarded below. The cause is reversed and remanded with instructions to enter summary judgment for the defendants.
 
 
 
 *
 The Honorable Eugene A. Wright, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, is sitting by designation
 
 
 [1]
 The court filed a second memorandum opinion on May 25, 1984 (R. Item 49), and its final judgment order on August 22, 1984 (R. Item 61)
 
 
 [2]
 The amici insurers are Alliance of American Insurers, American Insurance Association, National Association of Independent Insurers and State Farm Mutual Automobile Insurance Company
 
 
 [3]
 In his enigmatic brief on appeal plaintiff does not contend that pre-tow notice is required, stating it is "a point not at issue" (Pltf. Br. 8), but of course it is a major point of defendants' appeal and therefore must be considered
 
 
 [4]
 Finality of the deprivation is not a concern in these vehicle towing cases
 
 
 [5]
 See Suggestion of Intervening Petitioners--Appellants Merit Insurance Company, Heritage Insurance Company, Prestige Casualty Company, Reliable Insurance Company, Delta Casualty Company and Coronet Insurance Company at p. 2. Their intervention was denied by the district court (R. Item 50)