**Edwin F. DAVID, on behalf of himself and a class of all persons similarly situated, Plaintiff–Appellant,**

**v.**

**CITY OF LOS ANGELES, Defendant–Appellee.**

**No.  00–57091.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 2002.

Filed Oct. 9, 2002.

---

**19.**   *See Ghotra v. Bandila Shipping, Inc.,* 113     F.3d 1050, 1059 (9th Cir.1997).

William A. Kent, Irvine, CA, for the plaintiff-appellant.

Renée J. Laurents, Office of the City Attorney, Los Angeles, CA, for the defendant-appellee.

Before KOZINSKI and FERNANDEZ, Circuit Judges, and KING,* District Judge.

Opinion by Judge FERNANDEZ; Dissent by Judge KOZINSKI.

## OPINION

FERNANDEZ, Circuit Judge.

Edwin David brought this action on the basis that the procedures used by the City of Los Angeles after a car has been towed and stored for an alleged parking violation do not comport with the demands of due process. *See* U.S. Const. amend. XIV, § 1. The district court granted summary judgment against David and in favor of the City. We affirm in part and reverse and remand in part.

## BACKGROUND

On August 13, 1998, David had a doctor's appointment at an office on Olympic Blvd. in the City of Los Angeles. He found a parking place on that street and parked his car there at approximately 2:30 p.m. He expected to get back fairly quickly, but, as it turned out, he did not return to the place where he expected to find his car until 3:15 p.m. Alas, his car was not there; he had parked it in an area where parking was not permitted between 3:00 p.m. and 7:00 p.m., and an officer of the City's Department of Transportation had ordered it towed.

While there were signs posted which gave notice of the restriction and warned that vehicles in violation of the restriction could be towed, David says he did not see the signs, one of which was just five feet away from his car. He claims that there were other vehicles in the way and tree limbs that blocked his vision from inside the car when he parked, and that he was distracted by a person who commented upon his automobile after he got out of it.

At any rate, David went to the impound station that very day, paid $134.50 to spring his car, and asked for a hearing. He was given a form, which he took to the Department of Transportation building forthwith. Five days later, David was sent another request form, and promptly returned that form to the Department of Transportation. Thereafter, he was notified that a hearing was scheduled for September 9, 1998.

Before he left to go to the hearing, he was called, told that the officer could not be there, and informed that he could have an extension if he desired. He did not so desire. Instead, David went to the hear-

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

ing hoping to confront the officer (or get the case dismissed), but, as he had been warned, the officer was not there. David was told that he could either proceed without the officer, or have the hearing continued to a later date when the officer could be made available. David chose to proceed.

The hearing examiner, an employee of the Department of Transportation, took notice of the report of the officer, who had ordered the towing of David's vehicle, and listened to David's explanation. David did not actually dispute that his car had been parked in the restricted zone beyond the 3:00 p.m. deadline, but offered certain explanations. The examiner found probable cause to tow the vehicle and no viable defense to what the officer had ordered. Thus, the examiner ruled against David, who was told that he could file a claim with the City Clerk if he was not satisfied with the result. David did that, but his claim was rejected. He then commenced this action under 42 U.S.C. § 1983 on the basis that the procedure used by the City violated his federal constitutional rights in a number of respects. The district court granted summary judgment against him, and this appeal followed.

## STANDARD OF REVIEW

■ We review the district court's grant of summary judgment de novo. *See Delta Sav. Bank v. United States,* 265 F.3d 1017, 1021 (9th Cir.2001), *cert. denied,* — U.S. ——, 122 S.Ct. 816, 151 L.Ed.2d 700 (2002). We also review de novo the claim that the procedures used violated David's constitutional rights. *See Dittman v. California,* 191 F.3d 1020, 1024–25 (9th Cir. 1999); *Martinez v. City of Los Angeles,* 141 F.3d 1373, 1382 (9th Cir.1998).

## DISCUSSION

David does not claim that he was not overparked. What he does assert is that his procedural due process rights were violated in a number of particulars. He argues that the post-towing hearing was delayed too long; that he was denied the right to cross-examine the officer who ordered the towing and storage; that the hearing examiner was biased as a matter of law because he works for the Department of Transportation, as did the officer who ordered the towing; that the burden of persuasion was improperly shifted to him; that evidence was not delivered to him; and that he did not receive a proper notification regarding his appeal rights. We will consider each of these, although only the first of them requires extended discussion.

### A. *The Hearing Delay* [1]

■ It is apparent, as David argues, that the City set a hearing for a number of weeks after his car was towed on August 13, 1998, despite David's insistent and immediate demand that he be given a hearing forthwith. That appears to be in violation of state law; more importantly, it is a violation of the United States Constitution.

We faced this issue twenty-five years ago in a case where the City of San Francisco towed and stored the plaintiffs' automobiles, and they objected to the lack of an expeditious procedure to attack those actions. *See Stypmann v. City & County of San Francisco,* 557 F.2d 1338, 1340–41 (9th Cir.1977). The city had attempted to deflect that attack by providing that certain people, those who could not afford towage fees, could get a hearing within five days after notifying the city of that

---

**1.** The district court did not actually consider this claim because it did not believe that the claim was encompassed by the pleadings. We disagree. At root, one aspect of David's

claim was, and is, that the State's statutes and the City's procedures unduly delay post-towing hearings.

fact. *Id.* at 1341. We were not impressed with that limited concession.[2] We did take note of its limited applicability, *see id.* at 1344 n. 21, but declared:

> Seizure of property without prior hearing has been sustained only where the owner is afforded prompt post-seizure hearing at which the person seizing the property must at least make a showing of probable cause. . . .
>
> An early hearing, on the other hand, would provide vehicle owners the opportunity to test the factual basis of the tow and thus protect them against erroneous deprivation of the use of their vehicles. . . . We conclude, therefore, that [the state statute ] does not comply with due process requirements.
>
> Nor is the statute saved by the San Francisco ordinance. A five-day delay in justifying detention of a private vehicle is too long. Days, even hours, of unnecessary delay may impose onerous burdens upon a person deprived of his vehicle.

*Id.* at 1344 (footnotes omitted). In *Stypmann,* we were most concerned with the fact that the automobile itself would be held unless and until the fees were paid, but did not declare that the payment of those fees would elide the requirement of a prompt hearing. Rather, we spoke more generally.

California thereafter adopted a statute that responded to our concerns. It provides that once a vehicle is ordered stored by "an authorized member of a public agency," the agency shall provide the owner with "the opportunity for a poststorage hearing." Cal. Veh.Code § 22852(a). The agency must give the owner notice within 48 hours, Cal. Veh.Code § 22852(b), and the owner may request a hearing. Cal. Veh.Code § 22852(b)(4). "The poststorage hearing shall be conducted within 48 hours of the request, excluding weekends and holidays. The public agency may authorize its own officer or employee to conduct the hearing if the hearing officer is not the same person who directed the storage of the vehicle." Cal. Veh.Code § 22852(c). It should be noted that this statute also speaks generally, and does not limit its protections to those who have not put up the fees necessary to release their vehicles from storage.

We returned to the fray in 1982, when another irate citizen, whose automobile had been impounded by the City of Los Angeles, sued. *See Goichman v. Rheuban Motors, Inc.,* 682 F.2d 1320, 1322 (9th Cir. 1982). Goichman's car had been towed and stored at the direction of an officer. Goichman went to the storage facility to demand its return, but was told that he had to pay towing and storage fees. He paid them, his car was released, and he brought a civil rights action. *Id.*

We did not reject Goichman's claim out of hand on the basis that he had paid the fees and obtained release of the vehicle. Rather, we saw the question before us as "whether the post-seizure hearing provided by section 22852 of the California Vehicle Code and the Los Angeles ordinance is sufficiently prompt to satisfy due process requirements." *Id.* at 1324. We answered that question in the affirmative and opined: "Balancing the governmental and private interests at stake, we hold that provision for a post-seizure hearing within forty-eight hours satisfies the requirements of due process." *Id.* at 1325. While this does amount to a ruling that the state statute is constitutional, it does not help the City, which did not follow the statute.

---

**2.** However, we mentioned that, "[t]he fact that San Francisco has undertaken to provide a hearing in some circumstances suggests that it is neither unduly burdensome nor unduly costly to do so." *Id.* at 1343 (footnote omitted).

Nevertheless, the City takes the position that it need not adhere to the statute, or to our opinions about due process. It comforts itself with the reflection that Goichman "refused to pay the towing fees," and brushes the case aside on that basis. It adds, "[t]he court there held that the challenge to the towing must be conditioned upon the payment of the impound fees." That is the veriest nonsense. As we said, "Rheuban conditioned return of the automobile on payment of $32.00 in towing charges and $4.50 in storage charges. Goichman paid the charges, and Rheuban released the vehicle." *Id.* at 1322. Moreover, as to payment of fees, what we said was that due process did not require "return-on-demand." *Id.* at 1324. We then approved of conducting a hearing as long as forty-eight hours after the seizure.

What is clear is that the City cannot point to the slightest possibility that it has met the five day limit we set out in *Stypmann*, much less the 48 hours standard of state law. In other words, the long delay amounts to a violation of due process. We, therefore, reverse the district court's grant of summary judgment in this respect. If anyone were entitled to summary judgment on this issue and this record, it would be David.

### B. *Other Claims*

David's other constitutional claims are of less moment and merit, and we may dispose of them more sententiously.

■ He asserts that he was denied the right to cross-examine the officer who issued the towing order. But cross-examination is not, in every instance, a sine qua non of due process. It all depends on the situation. *See, e.g., Travers v. Shalala,* 20 F.3d 993, 998 (9th Cir.1994); *Nash v. Auburn Univ.,* 812 F.2d 655, 663–64 (11th Cir.1987); *Farrow v. United States,* 580 F.2d 1339, 1353 n. 25 (9th Cir.1978). There is no real dispute that David's car

was parked after 3:00 p.m. in an area that provided for towing after that hour. He could hardly deny that, and when asked what he would have expected to cross-examine on, David essentially mentioned many irrelevancies, like, do you get a bonus or a trip to Las Vegas, did you worry about where the owner was, is there no respect, why is it like a computer? He would also have questioned the officer's authority, but there is no indication in this record that the officer's authority was in doubt. More than that, the fact is that David was not lured into a useless trip to the hearing room. He was called in advance, and was given the option of having his hearing postponed so that the officer could appear. When David appeared anyway, he was again told that he could have a continuance or could go ahead without the officer. He chose the latter. His rights were not thereby violated. That is not to say that a City policy of regularly causing even further delays, or a waiver of rights, by failing to have the towing officer present would be proper, if the vehicle owner wanted him there. At the very least, it would bespeak a further evasion of the requirement of a prompt hearing. But no evidence of that is in this record.

David also asserts that the mere fact that the hearing examiner was employed by the agency—or the City—was sufficient to show a due process violation because the officer who ordered the towing and storage worked for the agency also. That simply is not the law. *See Withrow v. Larkin,* 421 U.S. 35, 46–50, 95 S.Ct. 1456, 1464–65, 43 L.Ed.2d 712 (1975); *United States v. Garcia–Martinez,* 228 F.3d 956, 960–63 (9th Cir.2000), *cert. denied,* 531 U.S. 1179, 121 S.Ct. 1158, 148 L.Ed.2d 1018 (2001); *Spokane County Legal Servs., Inc. v. Legal Servs. Corp.,* 614 F.2d 662, 668 (9th Cir.1980).

■ David next insists that his constitutional rights were violated because the

burden of persuasion was shifted to him at the hearing. State law does provide that the burden of persuasion is upon the City as far as demonstration of a valid seizure of the vehicle is concerned. *See Smith v. Santa Rosa Police Dep't,* 97 Cal.App.4th 546, 569, 119 Cal.Rptr.2d 72, 89–90 (2002). But this record does not show that the burden on that issue was shifted to David. Rather, the evidence showed probable cause to tow and store the vehicle, and David's evidence appears to be more in the nature of mitigation. That is an issue on which he would bear the burden of persuasion. *See id.* In any event, we have declared that in forfeiture proceedings, which are much like the proceeding at hand, although more Draconian, the shifting of the burden of persuasion to the owner is not a violation of due process once probable cause to seize the property is shown. *See United States v. $129,727.00 United States Currency,* 129 F.3d 486, 492–94 (9th Cir.1997).

Next, David assaults the process used by the City by claiming that he was misdirected about his appeal rights. As a matter of fact, the City did inform him about the internal processes of the City, such as they were. They amounted to filing a claim for damages. Nothing the City said or did precluded David from selecting some other route if he preferred,[3] and he points to no law or principle that required the City to outline all of the other possibilities either at or after completion of the post deprivation hearing, if there were any such possibilities.

David's final claim that evidence was withheld from him is of the same ilk as his appeal process claim. He presented nothing to the district court to demonstrate withholding of evidence. According to the record, the hearing examiner relied upon the report from the towing officer and upon the evidence submitted by David himself.

## CONCLUSION

In David's eyes, the towing and storage of his automobile were directed by one of the City's myrmidons, and any decent public servant would have been more kindly. Perhaps his outrage has some basis; perhaps not. In any event, that does not affect the propriety of the towing of his car; nor does it suggest that the actual conduct of the post-storage hearing was defective.

However, we cannot gainsay David's assertion that the district court erred when it granted summary judgment on his claim that the City violated his due process rights when it failed to give him a prompt post-storage hearing upon demand. Our cases make that much clear. We are somewhat puzzled that twenty-five years after we pointed out the impropriety of undue delay, the problem is recrudescent. But puzzled or not, we are not in doubt. Our path is clear; we must reverse and remand for further proceedings.

AFFIRMED in part, REVERSED in part, and REMANDED. David shall recover his costs on appeal.

KOZINSKI, Circuit Judge, dissenting.

The majority relies on *Stypmann v. City & County of San Francisco,* 557 F.2d 1338 (9th Cir.1977), and *Goichman v. Rheuban Motors, Inc.,* 682 F.2d 1320 (9th Cir.1982),

---

**3.** David suggests that he could have brought an action for administrative mandamus. *See* Cal.Civ.Proc.Code § 1094.6. Perhaps so, but he points to nothing the City did which precluded him from doing so and, more importantly, he does not indicate that he even attempted to do so. We cannot say that an attempt would have been turned aside, if, as he says, the City set out to, and did, mislead him. *See Sinetos v. DMV,* 160 Cal.App.3d 1172, 1177, 207 Cal.Rptr. 207, 210 (1984).

which are cases involving cars. But this isn't a car case; David paid the impound fees and recovered his car the day it was towed. David wanted a hearing to get back his cash. The question before us is whether the city must provide a hearing within 48 hours to contest a $134.50 fine. Looking to the familiar balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the clear answer is no.

*Mathews* explains that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." 424 U.S. at 334, 96 S.Ct. 893 (internal quotation marks omitted). To make that determination, we look to the "governmental and private interests that are affected." *Id.* Here, David's interest is only in money. Unlike some deprivations, where the passage of even a day or two can cause substantial and irreparable harm, money is fungible; a loss of money can normally be made up with more money.[1] And, being out $134.50 isn't much of a burden if you can pay the money in the first place.[2] If David hadn't paid the money to get his car out of hock, he could have demanded a hearing within 48 hours. Had the city failed to provide him a hearing within that time, David probably would have had a solid claim. But David did pay the money, so the only thing he lost was use of the $134.50 for a few weeks—not such a big deal.

The government interest in delaying the hearing, on the other hand, is quite substantial. It takes time to organize hearings: there are only so many courtrooms and presiding officials; the city has to contact the towing officer and arrange for his appearance; the city may have to find a substitute to cover that officer's responsibilities while he attends the hearing. *See Goichman*, 682 F.2d at 1324–25. And, the city must do this for hundreds, perhaps thousands, of claimants each month. Given the minimal private interest, I can't say that the city was required to drop everything and give David an immediate hearing for his $134.50.

The majority's reliance on our post-deprivation cases is misplaced. *Stypmann* was careful to explain that its holding turned on the heavy weight it assigned "[t]he private interest in the uninterrupted use of an automobile." 557 F.2d at 1342; *see also id.* at 1342–43 ("A person's ability to make a living and his access to both the necessities and amenities of life may depend upon the availability of an automobile when needed."); *id.* at 1344 ("A five-day delay in justifying detention of a private vehicle is too long. Days, even hours, of unnecessary delay may impose onerous burdens upon a person deprived of his vehicle."). *Goichman* was no different. The focus of the inquiry, as in *Stypmann*, was a specific deprivation: the use of one's automobile. *See* 682 F.2d at 1324. *Stypmann* and *Goichman* did not set the rule for cars, money and all other property alike.

Of course, had David been stuck without his car because he couldn't pay the impound fees, the city's untimely hearing may have violated his due process rights. *See Stypmann*, 557 F.2d at 1344–45.[3] But

---

1. The issue is different if the money is needed for living expenses. In such a case, a post-deprivation hearing—no matter how prompt—might not be adequate. Due process may require a *pre*-deprivation hearing. *See, e.g., Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

2. Whether David would have been entitled to interest had he prevailed before the hearing officer is a separate question.

3. On the other hand, had David left the car at the impound lot, the city may have given him a hearing more promptly, and so he may have had nothing to complain about. We can only speculate.

David did pay the fees and so he wasn't deprived of his car. Simply because a system "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). David may not raise the claims of others against whom the city's procedures might operate unconstitutionally. Unless David can show that the process *he* received—a hearing to challenge the tow within a month after paying a fine to spring his car—was constitutionally deficient, he can't state a claim under section 1983.

The city's failure to give David a prompt hearing may well have violated state law. *See* Cal. Veh.Code § 22852(c). David may have been able to challenge this violation in state court. Whether the delay violated David's *federal* rights, however, is a different question, and one that requires "a sensitive inquiry into the competing governmental and private interests affected." *Goichman,* 682 F.2d at 1324. The majority mistakenly applies our cases involving deprivation of an automobile to the deprivation of a small sum of cash. But money used to redeem a car does not thereby become a car; money is money, no matter what use it's been put to. I see no authority for extending the car cases to this very different situation.