Francis CARCAMO, individually, and on behalf of all others similarly situated, Plaintiffs,

v.

MIAMI–DADE COUNTY, and Downtown Towing Company, a Florida Corporation, Defendants.

No. 02–20870–CIV.

United States District Court, S.D. Florida.

Filed April 10, 2003.

Sept. 3, 2003.

Usher Bryn, Usher Bryn, Aventura, FL, for Francis Carcamo, plaintiff.

Richard Brian Rosenthal, Jeffrey Paul Ehrlich, Dade County Attorney's Office, Miami, FL, for Miami–Dade County, defendant.

Francis Xavier Santana, Miami, FL, for Downtown Towing Company, defendant.

### ORDER GRANTING DEFENDANT MIAMI–DADE COUNTY'S MOTION TO DISMISS

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Defendant Miami–Dade County's Motion to Dismiss, filed July 22, 2003.

THIS COURT has considered the motion, the pertinent portions of the record and is otherwise fully advised in the premises. Plaintiff began this action on April 10, 2003. On July 3, 2003, Plaintiff, with leave of Court, filed a four-count second amended complaint ("Complaint") challenging, inter alia, pursuant to 42 U.S.C. § 1983, Defendant Miami–Dade County's ("Defendant") practice of impounding recovered stolen vehicles. Defendant filed a motion to dismiss on July 22, 2003 ("Motion"). On August 1, 2003, Plaintiff filed a Response to Miami–Dade County's Motion to Dismiss Second Amended Complaint ("Response"), to which Defendant replied on August 8, 2003 ("Reply"). The matter is ripe for disposition.

### STATEMENT OF FACTS

On July 1, 2002, Plaintiff's 1997 Toyota Tercel was stolen and, on July 4, 2002, it was recovered by the Metro–Dade Police. See Complaint at 2. Without notifying Plaintiff, the Metro–Dade Police impounded Plaintiff's vehicle at Defendant Downtown Towing Company's storage yard. See id. at 2–3. Plaintiff's vehicle was towed pursuant to Defendant's custom, policy or practice of impounding every recovered stolen vehicle, irrespective of whether an emergency situation justified the prompt removal of the vehicle. See id. at 3. Plaintiff's vehicle was not parked illegally and was not obstructing traffic. See id. Plaintiff paid Defendant Downtown Towing Company $208.20, the amount Defendant Downtown Towing Company demanded to release the vehicle. See id. The $208.20 paid to Defendant Downtown Towing Company included a $15.00 county administrative fee and $5.20 state sales tax. See id. at 4. Plaintiff is not indigent and she did not have to borrow any money in order to pay Defendant Downtown Towing Company the $208.20 to secure the release of her vehicle. See id.

### MOTION TO DISMISS STANDARD

On a motion to dismiss the Court must view the complaint in the light most favorable to the plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), and may grant the motion only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Bradberry v. Pinellas County, 789 F.2d 1513, 1515 (11th Cir.1986). See also Fed.R.Civ.P. 8(a) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief."). Moreover, the Court must, "at this stage of the litigation, . . . accept [the plaintiff's] allegations as true." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); Stephens v. Dep't of Health and Human Services, 901 F.2d 1571, 1573 (11th Cir.1990). Thus, the inquiry focuses on whether the challenged pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47, 78 S.Ct. 99.

### LEGAL ANALYSIS

In count I of her complaint, Plaintiff alleges that "the defendants impounded [her] vehicle without affording her any opportunity to request a prompt post-impoundment probable cause hearing and/or

adversarial hearing to determine the propriety of the impoundment and/or imposition of fees." Complaint at 12 (emphasis added). The complaint further states: "[t]he defendants' action violated procedural due process because there is no process available which affords the owners and operators of impounded vehicles a reasonable opportunity to request a hearing to contest the propriety of the impoundment and the imposition of fees." *Id.* Defendant argues that count I of the complaint must be dismissed because Defendant provided Plaintiff with a post-tow procedure—contained in Fla. Stat. 713.78—to challenge the propriety of the impoundment of her car and the imposition of fees.[1] *See* Motion at 3. Therefore,

1. Fla. Stat. § 713.78 provides in relevant part:

> (4)(a) Any person regularly engaged in the business of recovering, towing, or storing vehicles or vessels who comes into possession of a vehicle or vessel pursuant to subsection (2), and who claims a lien for recovery, towing, or storage services, shall give notice to the registered owner, the insurance company insuring the vehicle ... and to all persons claiming a lien thereon, as disclosed by the records in the Department of Highway Safety and Motor Vehicles or of a corresponding agency in any other state.
> (b) Whenever any law enforcement agency authorizes the removal of a vehicle or whenever any towing service, garage, repair shop, or automotive service, storage, or parking place notifies the law enforcement agency of possession of a vehicle ..., the applicable law enforcement agency shall contact the Department of Highway Safety and Motor Vehicles, or the appropriate agency of the state of registration, if known, within 24 hours through the medium of electronic communications, giving the full description of the vehicle. Upon receipt of the full description of the vehicle, the department shall search its files to determine the owner's name, the insurance company insuring the vehicle, and whether any person has filed a lien upon the vehicle ... and notify the applicable law enforcement agency within 72 hours. The person in charge of the towing service, garage, repair shop, or automotive service, storage, or parking place shall obtain such information from the applicable law enforcement agency within 5 days from the date of storage and shall give notice pursuant to paragraph (a). [. . .]
> (c) Notice by certified mail, return receipt requested, shall be sent within 7 business days after the date of storage of the vehicle or vessel to the registered owner, the insurance company insuring the vehicle ... and all persons of record claiming a lien against the vehicle or vessel. It shall state the fact of possession of the vehicle or vessel, that a lien as provided in subsection (2) is claimed, that charges have accrued and the amount thereof, that the lien is subject to enforcement pursuant to law, and that the owner or lienholder, if any, has the right to a hearing as set forth in subsection (5), and that any vehicle or vessel which remains unclaimed, or for which the charges for recovery, towing, or storage services remain unpaid, may be sold free of all prior liens after 35 days if the vehicle or vessel is more than 3 years of age or after 50 days if the vehicle or vessel is 3 years of age or less.
> (d) If attempts to locate the owner or lienholder prove unsuccessful, the towing-storage operator shall, after 7 working days, excluding Saturday and Sunday, of the initial tow or storage, notify the public agency of jurisdiction in writing by certified mail or acknowledged hand delivery that the towing-storage company has been unable to locate the owner or lienholder and a physical search of the vehicle or vessel has disclosed no ownership information and a good faith effort has been made. [The statute then proceeds to define "good faith effort" in detail.]
> (5)(a) The owner of a vehicle or vessel removed pursuant to the provisions of subsection (2), or any person claiming a lien, other than the towing-storage operator, within 10 days after the time she or he has knowledge of the location of the vehicle or vessel, may file a complaint in the county court of the county in which the vehicle or vessel is stored or in which the owner resides to determine if her or his property was wrongfully taken or withheld from her or him.
> (b) Upon filing of a complaint, an owner or lienholder may have her or his vehicle or vessel released upon posting with the court a cash or surety bond or other adequate security equal to the amount of the charges

the issue before this Court is whether, under the facts of this case, Plaintiff's procedural due process rights were violated despite the fact that Fla. Stat. 713.78 allowed her to challenge the appropriateness of (1) Defendant's tow and impoundment of her recovered stolen car and (2) Defendant's imposition of the fees that Plaintiff paid to secure the release of her vehicle.[2]

In *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court outlined three factors that normally determine whether an individual has received the "process" that the Constitution finds "due." The Court stated:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. 893. "By weighing these concerns, courts can determine whether a State has met the fundamental requirement of due process-the opportuni-

ty to be heard 'at a meaningful time and in a meaningful manner.'" *City of Los Angeles v. David,* — U.S. —, 123 S.Ct. 1895, 1896, 155 L.Ed.2d 946 (2003) (quoting *Eldridge,* 424 U.S. at 333, 96 S.Ct. 893) (internal quotations omitted).

Applying the *Eldridge* factors to the facts of this case, the undersigned concludes that Defendant did not violate Plaintiff's procedural due process rights because Plaintiff had access to an adequate post-deprivation remedy, to which she failed to avail herself. First, Plaintiff's private interest in this case is purely monetary. As the Supreme Court stated in *David,* the private interest "consists of the private individual's interest in maintaining the use of money between (a) the time of paying the impoundment and towing fees and (b) the time of the hearing."[3] *David,* 123 S.Ct. at 1896. Such a monetary interest is far less serious than, for example, the temporary deprivation of a job, *see FDIC v. Mallen,* 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265(1988), or the temporary deprivation of the use of the vehicle itself. *See Stypmann v. San Francisco,* 557 F.2d 1338, 1342–1344 (9th Cir.1977); *David,* 123 S.Ct. at 1896. Additionally, Plaintiff alleged in her complaint that she did not pay the fees "under protest," *see*

for towing or storage and lot rental amount to ensure the payment of such charges in the event she or he does not prevail. Upon the posting of the bond and the payment of the applicable fee ... the clerk of the court shall issue a certificate notifying the lienor of the posting of the bond and directing the lienor to release the vehicle or vessel. At the time of such release, after reasonable inspection, she or he shall give a receipt to the towing-storage company reciting any claims she or he has for loss or damage to the vehicle or vessel or the contents thereof. (c) Upon determining the respective rights of the parties, the court may award damages and costs in favor of the prevailing party. In any event, the final order shall provide for immediate payment in full of recovery, towing, and storage fees by the

vehicle or vessel owner or lienholder; or the agency ordering the tow; or the owner, lessee, or agent thereof of the property from which the vehicle or vessel was removed.

2. Plaintiff is not alleging that a hearing should have been held *before* her car was towed and impounded or *before* she paid the fees to obtain the return of her vehicle. *See* Complaint at 12. Therefore, only Defendant's post-deprivation remedy available to Plaintiff is at issue.

3. *See also David v. City of Los Angeles,* 307 F.3d 1143, 1149–1150 (9th Cir.2002) ("The majority relies on ... cases involving cars. But this isn't a car case; David paid the impound fees and recovered his car the day it was towed.") (Kozinski, J., dissenting).

Complaint at 3, and, more importantly, that she **"is not indigent**—she did not have to borrow any money in order to pay Downtown Towing $208.20 to secure the release of her vehicle." *Id.* at 4 (emphasis in original). Moreover, the private interest is further minimized by the fact that Plaintiff could have recovered damages and costs had she challenged, with success, Defendant's tow and impoundment of her car, and the imposition of fees. *See* Fla. Stat. § 713.78(5)(c) ("Upon determining the respective rights of the parties, the court may award damages and costs in favor of the prevailing party."); *see also David,* 123 S.Ct. at 1897 ("[A]ny loss in the time value of the money can be compensated by an interest payment.").

With regards to the second *Eldridge* factor, the risk of an erroneous deprivation of Plaintiff's interest through the procedures used in this case is "extremely slight." *See Miller v. City of Chicago,* 774 F.2d 188, 193 (7th Cir.1985). As the Seventh Circuit explained, "[t]he determination that a particular vehicle has been reported stolen is a 'cut and dried' one, much like the determination of a parking violation in *Sutton,* and unlike the determination of whether a car has been abandoned where the subjective intent of the owner is at issue." *See Miller,* 774 F.2d at 192–193 (citing *Sutton v. Milwaukee,* 672 F.2d 644, 646 (7th Cir.1982) and *Tedeschi v. Blackwood,* 410 F.Supp. 34, 45 (D.Conn. 1976)).

Plaintiff argues that the length of the delay between the deprivation and the hearing—"an aggrieved party would have to wait at least 60 days for a trial on the merits"—is cause for concern as to the accuracy of the final determination. *See* Response at 11–12. However, a sixty-day delay under the circumstances of this case

would not increase the risk of an erroneous deprivation.[4] First, as stated above, the simple nature of the issue to be resolved at the hearing—whether Plaintiff's car was indeed stolen—renders towing and impoundment errors negligible. *See David,* 123 S.Ct. at 1897 ("[T]he straightforward nature of the issue—whether the car was illegally parked—indicates that initial towing errors, while they may occur, are unlikely."); *Miller,* 774 F.2d at 192–193 (finding that the determination of whether a particular vehicle has been reported stolen in a " 'cut and dried' one"). Second, in situations such as presented here—where the vehicle has already been returned to its owner and the deprivation is merely financial—the Supreme Court has stated that a "routine delay substantially required by administrative needs" does not render the process constitutionally inadequate. *See David,* 123 S.Ct. at 1897–1898 ("A 30–day delay in presenting evidence is unlikely to spawn significant factual errors. Administrative and judicial proceedings normally take place after considerably more time has elapsed."). Third, Plaintiff's attempt to make a sixty-day delay a *per se* due process violation is unavailing. In fact, courts have found delays exceeding sixty days not to violate the Constitution. *See, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 547, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (holding that a nine-month delay between the deprivation and the hearing did not violate the Due Process Clause); *Ritter v. Cohen,* 797 F.2d 119, 124 (3d Cir.1986) (holding that twenty-month delay did not violate due process). As the Supreme Court has often said, due process is a flexible concept that varies with the particular situation of every case, *see, e.g., Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 108

---

**4.** As an initial matter, Plaintiff's assertion that a determination as to the appropriateness of the deprivation in her case would take at least

sixty days is purely speculative because she did not avail herself to the procedures of Fla. Stat. § 713.78.

L.Ed.2d 100 (1990); *Mathews v. Eldridge,* 424 U.S. at 334, 96 S.Ct. 893; and Plaintiff's attempt to set a constitutional deadline for the final determination regarding the appropriateness of her deprivation must be rejected. *See David v. City of Los Angeles,* 307 F.3d 1143, 1149 (9th Cir. 2002) ("Given the minimal private interest, I can't say that the city was required to drop everything and give David an immediate hearing for his $134.50.") (Kozinski, J., dissenting).

The third *Eldridge* factor, namely the government's interest, favors Defendant in this case. As Judge Kozinski of the United States Court of Appeals for the Ninth Circuit stated in *David,*

> [t]he government interest in delaying the hearing, on the other hand, is quite substantial. It takes time to organize hearings: there are only so may courtrooms and presiding officials; the city has to contact the towing officer and arrange for his appearance; the city may have to find a substitute to cover that officer's responsibilities while he attends the hearing. And, the city must do this for hundreds, perhaps thousands, of claimants each month. Given the minimal private interest, I can't say that the city was required to drop everything

and give David an immediate hearing for his $134.50.

*David v. City of Los Angeles,* 307 F.3d 1143, 1150 (9th Cir.2002) (Kozinski, J., dissenting). The Supreme Court agreed with Judge Kozinski and found that "the nature of the city's interest in delay is one of administrative necessity," which "argues strongly in the city's favor." *David,* 123 S.Ct. at 1897.[5] Therefore, after balancing the *Eldridge* factors, the undersigned concludes that Plaintiff's procedural due process rights were not violated because she had access to adequate post-deprivation remedies.

Accordingly, it is

ORDERED AND ADJUDGED that Defendant Miami–Dade County's motion to dismiss is GRANTED as to count I.[6] The Court declines to exercise supplemental jurisdiction of the other claims contained in the second amended complaint. *See* 28 U.S.C. § 1367(c)(3); *see also Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) (stating that the Declaratory Judgment Act does not in itself confer jurisdiction upon federal courts); *Woods v. City and County of Denver,* 62 Fed.Appx. 286, 289 (10th Cir. 2003) ("[T]he Declaratory Judgment Act

**5.** Plaintiff argues that the existence of a cause of action to pursue her claim is an inadequate substitute for a hearing to be provided by Defendant itself. *See* Response at 6–10. However, the Eleventh Circuit has held that when the state provides a cause of action to challenge the continued retention of property, an adequate post deprivation remedy is available and no procedural due process violation ensues. *See, e.g., Lindsey v. Storey,* 936 F.2d 554, 561 (11th Cir.1991) ("[A]s long as *some* adequate post–deprivation remedy is available, no due process violation occurred. The state of Georgia has created a civil cause of action for the wrongful conversion of personal property.... Because plaintiff Lindsey has had access to an adequate post–deprivation

remedy, no procedural due process violation has occurred.") (internal citations omitted) (emphasis in original); *Byrd v. Stewart,* 811 F.2d 554, 555 n. 1 (11th Cir.1987) (same).

**6.** Having dismissed count 1 of the second amended complaint, the Court lacks jurisdiction to entertain Plaintiff's claims against Defendant Downtown Towing Company, a Florida corporation with its principal place of business is in Miami–Dade County, Florida. *See, e.g., Cardtoons, L.C. v. Major League Baseball Players Ass'n,* 95 F.3d 959, 964 (10th Cir.1996) ("[I]n the absence of any pleading that invokes diversity jurisdiction, the relevant basis is federal question jurisdiction under 28 U.S.C. § 1331.").

does not extend the jurisdiction of federal courts.").