**Jack BARCENA, Plaintiff,**

v.

**DEPARTMENT OF OFF–STREET PARKING OF the CITY OF MIAMI, et al., Defendants.**

**No. 03–CIV–22722.**

United States District Court, S.D. Florida.

Jan. 12, 2007.

Usher Bryn, Usher Bryn, Aventura, FL, for Plaintiff.

Cesar Rafael Sordo, Sordo & Associates, Coconut Grove, FL, Arthur M. Freyre, Moulis & Associates, Fort Lauderdale, FL, Warren Bittner, Miami City Attorney's Office, Miami, FL, for Defendants.

### *OMNIBUS ORDER; CLOSING CASE*

ALAN S. GOLD, District Judge.

THIS CAUSE came before the Court upon the Motion for Summary Judgment filed by the Department of Off–Street Parking of the City of Miami (hereinafter "DOSP") **[DE # 128, filed on September 15, 2006]**,[1] "Motion to Certify Class (Re-

---

1. In support of its Motion for Summary Judg-   ment, DOSP filed a "Concise Statement of

newed Motion) and Memorandum of Law in Support of Class Action Certification" filed by Plaintiff [DE # 147, filed on October 23, 2006] and "Motion to Take Judicial Notice" filed by Plaintiff [DE # 156, filed on November 22, 2006].[2] Oral argument was held on November 17, 2006. After oral argument, I allowed the parties to submit supplemental briefing and to conduct additional discovery on several issues. [DE # 155] The parties submitted supplemental briefing [DE # 156, 158, 160, 161, and 162]. Therefore, this matter is now ripe for review.

## I. Background

On March 15, 2005, Plaintiff filed a First Amended Complaint [DE # 60]. Defendants DOSP and Margaret Buttery filed Motions to Dismiss addressing Plaintiff's First Amended Complaint [DE # 55 and 77]. In an Order dated October 18, 2005, I dismissed Count III of the First Amended Complaint and terminated Defendant Margaret Buttery as a party to this suit [DE # 91]. The following claims remain pending from the six-Count First Amended Complaint filed by Plaintiff Jack Barcena against Defendants DOSP, Orlando Molina and Molina Towing, Inc. (herein collectively "Molina"):

A. For alleged violation of procedural due process against DOSP (First Amended Complaint, Counts I and II);

B. For declaratory judgment concerning the scope of Florida's Towing Lien Statute against DOSP and Molina (First Amended Complaint, Count IV);

C. For declaratory judgment concerning the legality of DOSP's $25.00 administrative fee against DOSP (First Amended Complaint, Count V); and

D. For common law conversion under state law against Molina. (First Amended Complaint, Count VI).

On September 15, 2006, DOSP filed a Motion for Summary Judgment [DE # 128] and on October 23, 2006, Plaintiff filed a Second Motion to Certify Class (Renewed Motion) [DE # 147]. On November 17, 2006, I held oral argument and, thereafter, I allowed the parties to engage in limited discovery on a number of issues.

The following facts are gleaned from the parties' submissions and the Court's independent review of the copious record in this matter and are relevant for evaluating the pending Motions. Plaintiff was the owner of a 1984 Buick station wagon, tag number W64JXZ. (Affidavit of Jack Barcena, ¶ 1). Defendant DOSP is an agency and/or instrumentality of the City of Miami. Defendant Molina Towing, Inc. has an exclusive contract with DOSP to tow and impound vehicles at DOSP's re-

Material Facts of Department of Off–Street Parking" [DE # 129], an Affidavit of Humberto Escandon [DE # 130], as well as the Depositions of Jack Barcena, Humberto Escandon, and Margaret Buttery [DE # 131]. On October 4, 2006, Plaintiff filed a Response [DE # 137] and a Statement of Material Facts [DE # 138]. Plaintiff also filed Interrogatories [DE # 139]. On October 14, 2006, DOSP filed a Reply Brief. [DE # 142].

2. In his Motion for Judicial Notice, Plaintiff asked this Court to take Judicial Notice of 1) the "Due Process Settlement Agreement" in

the *Jasinski v. City of Miami*, Case No. 02–21572–Civ–Seitz;" 2) the "Notice of Filing City of Miami Ordinance Regarding Due Process Procedures;" 3) Miami–Dade Ordinance § 30–389; 4) Florida Statutes § 316.1955; and 5) Miami Code § 42–36. DOSP filed a Response to Plaintiff's Motion to Take Judicial Notice [DE # 161]. On December 15, 2006, Plaintiff filed a Reply. [DE # 162]. In evaluating the current Motion for Summary Judgment, I considered each of the items submitted by the parties.

quest. Defendant Orlando Molina is the President of Molina Towing, Inc.

Plaintiff resides at the Arena Hotel, 532 N. Miami Ave., Apt. 11, Miami, Florida. (Depo. of Jack Barcena, 6). Normally, Plaintiff parked his car approximately one-half mile from his residence (in a lawful non-metered parking space), since there are no non-metered parking spaces on the streets close to where he lives. (Affidavit of Jack Barcena, ¶ 3). It is undisputed that Plaintiff did not drive his car very often, however, he would check it periodically and run the engine to keep the battery charged. (Affidavit of Jack Barcena, ¶ 4). Between July 9 and July 18, 2003, Plaintiff's vehicle bearing Florida license plate W64JXZ parked at Meter No. 0462051 was issued a number of citations in violation of Section 30–378(c) of the Miami–Dade County Code for overtime parking. On July 18, 2003, at approximately 1:00 p.m., Parking Enforcement Specialist M. Buttery of the DOSP, authorized Molina to tow Plaintiff's vehicle after Plaintiff's car was issued a number of parking citations over a period of more than one week. When Parking Enforcement Specialist M. Buttery authorized the tow, the citation from the week before, as well as all subsequent citations, were all still on the windshield. The Vehicle Storage Receipt erroneously indicated the location of the vehicle before towing as 1300 N.W. 13th Ct., instead of the correct location, i.e., 1300 N.E. 13th Ct. (Depo. of Margaret Buttery, 15). Plaintiff's car was labeled an "abandoned vehicle." (Depo. of Margaret Buttery, 18). DOSP contends that the lawful basis for the impoundment of Plaintiff's car is Miami–Dade Ordinance Section 30–384(5) or Section 30–388.15(5).[3]

3. I do not address the issue in this Order if Plaintiff's car was properly impounded, I do note, however, that, following its amendment on April 8, 2003, Section 30–388.15(a)(5) of the Miami–Dade County Code, provides:

**30–388.15. Parking prohibited for certain purposes.**

(a) No person shall park a vehicle upon any road, street or public right-of-way, including the sidewalk and swale, located within unincorporated Miami–Dade County, except outside the urban development boundary, for the principal purposes of:

(1) Displaying such vehicle for sale.

(2) Washing, greasing or repairing such vehicle, except repairs necessary in an emergency.

(3) Displaying advertising.

(4) Selling merchandise from such vehicle except in a duly established market place, or when so authorized or licensed under the ordinances of this County.

(5) Storage, or as junkage or dead storage for more than twenty-four (24) hours.

(b) All violations of this section shall be punishable by a fine of one hundred dollars ($100.00) for the first vehicle on a first offense and five hundred dollars ($500.00) per vehicle for each additional vehicle and any repeated violation of this section. Any vehicle in violation of this section shall be towed if not removed immediately by the owner. Any vehicle that the Director of the Miami–Dade Police Department of his/her designee deems to pose a serious threat to the public health, safety, or welfare and is in violation of this section shall be towed if not removed within twenty-four (24) hours by the owner. (Vehicle owners will be responsible for all fines, towing fees, storage fees, and any administrative and enforcement fees that result from the enforcement of this section.) The County may lien the vehicle and any real property owned by the violator in Miami–Dade County until all fines, enforcement costs, and administrative costs are paid by the violator.

In relevant part, Section 30–384(a)(5), Miami–Dade County Code, provides:

**30–384 Impounding vehicles.**

(a) Police officers or such other employees as may be designated by the County Manager are authorized to remove a vehicle to the nearest garage or other place of safety, or to a garage designated or maintained by the County or by a municipality under the circumstances hereinafter enumerated.

(5) where such vehicle had been parked or stored on the public right-of-way for a period exceeding forty-eight (48) hours, in other than designated parking areas, and is within thirty (30) feet of the pavement edge.

On July 14, 2003, Miami Police Report Incident No. 20415943 reflects that Plaintiff reported that his 1984 Buick station wagon was stolen. On July 24, 2005, the Miami Police Department sent a letter to Plaintiff advising him that his car had been recovered, and that it was at Molina's place of business. (Affidavit of Jack Barcena, ¶ 6). Plaintiff estimates that he received the letter sometime at the end of July. (Depo. of Jack Barcena, ¶ 13–14).

On August 1, 2003, Molina sent a "Notice of Claim of Lien Letter and Proposed Sale of Motor Vehicle" pursuant to *Fla. Stat.* § 713.78 by certified mail. The envelope was postmarked August 1, 2003. According to the return receipt, Plaintiff obtained the letter, and signed for it at the post office on August 27, 2003. (Depo. of Jack Barcena, 18–19). The notice indicated that: (a) the accumulated towing and storage charges amounted to $100.00; (b) the owner had a right to a hearing under *Fla. Stat* § 713.78(4), to determine if their property was wrongfully taken; (c) the vehicle could be released to the owner after the owner posted a cash or surety bond or other adequate security equal to the amount of the charges for towing and storage with the court; and (d) the vehicle could be sold if not redeemed to satisfy the lien.

*Fla. Stat.* § 713.78(4)(c) provides that a towing company shall give "notice by certified mail within 7 business days of the date of storage of the vehicle." The Statute further provides in subsection (9) that "[f]ailure to make good faith best efforts to comply with the notice requirements of this section shall preclude the imposition of any storage charges against such vehicle..." It is undisputed that the notice of lien sent by Molina was not mailed within seven business days from the date of storage of Plaintiff's vehicle as required by *Fla. Stat.* § 713.78(4)(c), but was rather two days late. It is also undisputed that this notice of lien was the only notice given to Plaintiff informing him of his right to a hearing and/or post-deprivation remedies. On August 27, 2003, a public notice was published which advertised a public auction to be held at Molina on September 10, 2003, which included Plaintiff's vehicle. On September 9, 2003, Plaintiff wrote a hand-written letter to Molina.[4]

On September 9, 2003, Plaintiff went to Molina in person with $100.00 in hand. (Depo. of Jack Barcena, 27). Plaintiff testified that he was prepared to offer Molina up to $400.00 for the release of his car on September 9, 2003. (Depo. of Jack Barcena, 28). On September 10, 2003, at 2:00 p.m., Molina foreclosed its lien on Plaintiff's vehicle, after which Molina assumed ownership rights to the vehicle by submitting an application for a "certificate of destruction" to the Department of Motor Vehicles.

During calendar year 2003, DOSP towed approximately 2,156 improperly parked vehicles. (Affidavit of Humberto Escandon,

---

4. The letter states in relevant part:

In regards to my vehicle, Vin # 1G4AV35Y5EX43780, and invoice # 149223, a Buick (White + Brown car), who is currently owned by me (Jack Barcena).

You and your company have stated to me earlier, that at the time I went to recover my car, that both in the letter and being told, that I owed $100.00 on the car. I called and spoke with your manager and was told that the car, would not be released for that amount of money later in the weekend, and was told to call or come back later in the week. When I did contact you later in the week I was then told that I owed over $800.00! This is notify you that I will be by this afternoon 9/9/03 with $100.00 for my car. Why did you wait so long to send me the notification, after so many days, since my car came into your possession. This does not make sense.

¶ 10). During the three years prior to the impoundment of Plaintiff's vehicle, DOSP impounded 528 cars it deemed to be "abandoned" under Miami–Dade County Code § 30–388.15. (Joint Pretrial Stipulation, 12).

## II. Standard of Review

Rule 56(c) of Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there are no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir.2001).

In assessing whether the movant has met its burden, the court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts of fact in favor of the non-moving party. *Denney*, 247

F.3d at 1181. In determining whether to grant summary judgment, the court must remember that "[c]redibility determinations, weighting of the evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Additionally, a court must be careful not to weigh the evidence or make findings of fact when evaluating a motion for summary judgment. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir.2003). Rather the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

## III. Legal Analysis

### A. Due Process Claims (Counts I and II)

Plaintiff claims that "defendants impounded the plaintiff's vehicle without affording him an opportunity to request a pre- or post-impoundment probable cause hearing and/or adversarial hearing to determine the propriety of the impoundment and the imposition of fees." (First Amended Complaint at ¶ 45). I will first address the sufficiency of Plaintiff's claim that he was entitled to a pre-deprivation hearing before his vehicle was impounded or a hearing before Molina obtained title of Plaintiff's car. For the reasons stated below, I conclude he is not constitutionally entitled to a pre-deprivation hearing.

In *Parratt v. Taylor*, 451 U.S. 527, 540–41, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the United States Supreme Court held that "some kind of hearing is required at some time before a State finally deprives a person of his property interests. The fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful man-

ner.' " The *Parratt* court noted, however, that "we have rejected the proposition that 'at a meaningful time and in a meaningful manner' *always* requires the State to provide a hearing prior to the initial deprivation of property. This rejection is based in part on the impracticability in some cases of providing any [pre-seizure] hearing under a state-authorized procedure, and the assumption that at some time a full and meaningful hearing will be available." *Id.* The *Parratt* Court also concluded that pre-deprivation process is not necessary where the loss of the plaintiff's property was caused by a "random and unauthorized act by a state employee." *Id.* at 541, 101 S.Ct. 1908.

Plaintiff argues that he was entitled to a pre-deprivation hearing in this case because Plaintiff's vehicle was towed pursuant to "an established state procedure," not a random or unauthorized act. (Plaintiff's Response, 3). In *Carcamo v. Miami–Dade County,* 375 F.3d 1104, 1106 n. 4 (11th Cir.2004), the Eleventh Circuit rejected this argument. The Eleventh Circuit in *Carcamo* explained, "[w]e also note that Appellant is mistaken to assume that the existence of a government 'policy or practice' necessarily bars the application of *Parratt–Hudson.* Rather, post-deprivation remedies may be acceptable even in contexts involving a state policy or procedure." 375 F.3d at 1106 n. 4 (citing *Rittenhouse v. DeKalb County,* 764 F.2d 1451, 1455 (11th Cir.1985)). In *Rittenhouse,* the Eleventh Circuit considered the specific issue of whether a deprivation which occurs pursuant to an "established state procedure" mandates a pre-deprivation hearing under *Parratt.* 764 F.2d at 1455. The *Rittenhouse* court concluded that "[b]ecause [pre-deprivation] process is not feasible in the instant case, we conclude that the 'established state procedure' exception does not apply and that the *Parratt* analysis requires that we focus only on the

adequacy of [post-deprivation] remedies." *Id.* In analyzing this case under *Parratt,* "the controlling inquiry is solely whether the state is in a position to provide for [pre-deprivation] process." *Id.* Accordingly, I begin my analysis with this issue, i.e., whether a pre-tow hearing was feasible.

### 1. The Feasibility of a Pre–Deprivation Hearing

#### a. The Parties' Positions

DOSP contends, "a [pre-deprivation] hearing such as Plaintiff demands, was impracticable, unreasonable and not feasible." (DOSP's Motion for Summary Judgment, 4). In Response, Plaintiff argues that Miami enacted, "an ordinance (Miami Ordinance § 42–112) that provides for a post-tow hearing process that affords every owner of a towed vehicle an opportunity to request a hearing to contest the propriety of the seizure and imposition of fees." (Plaintiff's Response, 1). Plaintiff argues that Miami Ordinance § 42–112 provides for an administrative hearing upon demand within ten (10) days whenever a vehicle is towed by a law enforcement agency. (Plaintiff's Response, 2). Moreover, Plaintiff argues that he was entitled to a hearing after the car is towed, but before the deprivation became final, i.e., before Molina obtained title to Plaintiff's car at the lien foreclosure auction held 53 days after the vehicle was impounded. *Id.* Furthermore, Plaintiff also offers a number of other arguments with regard to the feasibility of conducting pre-tow hearings. On this point, Plaintiff argues:

> [t]here is no reasonable basis for DOSP to claim, as it does here, that if it afforded vehicle owners an opportunity to request pre- or post-tow hearing, it would be unduly burdensome for them. Furthermore, it is speculative at best that a rash of vehicle owners would request a hearing to contest the impoundment.

(Plaintiff's Response, 3). Lastly, Plaintiff argues that, "a pre-tow notice would perhaps lessen the burden on DOSP, because it would afford vehicle owners an opportunity to move the offending vehicle, thus eliminating the need for further action." (Plaintiff's Response, 3).[5]

### b. Plaintiff Did Not Rebut DOSP's Evidence That a Pre–Deprivation Hearing Was Infeasible.

DOSP has presented unrefuted evidence that it is not feasible for DOSP to provide all persons whose vehicles are towed for illegal parking with pre-deprivation process. Specifically, DOSP submitted the Affidavit of Humberto Escandon. In the Affidavit, Mr. Escandon states in relevant part:

2. As a governmental agency, DOSP operates on a fixed budget. Accordingly, the administrative resources available to DOSP are not limitless.

10. During calendar year 2003, DOSP towed approximately 2,156 improperly parked vehicles. I have no reason to believe that the number of vehicles towed in calendar year 2003 is not representative of a typical year as far as the number of tows are concerned.

11. In DOSP's judgment, parking regulations have a valid purpose and our enforcement of those regulations, through towing, implements those regulations more effectively than fines alone, or oven the assessment of heavier fines. As every driver knows, the threat of towing deters parking violations. If DOSP were to provide notice and a hearing to parking violators prior to towing them, including those we inart-

fully refer to as "abandoned," the deterrent provided by the "threat of towing" would be effectively eliminated-in our judgment.

12. Furthermore, it would take time if, prior to effecting a tow, we had to prepare notices, mail them out, organize hearings, arrange for hearing rooms and hearing officers, contact the enforcement specialist and arrange for an appearance, and find a substitute for the enforcement specialist to cover his or her territory during the hearing. By the time DOSP notified the owner, no matter how efficient the notification process would be, the vehicle would likely be gone.

13. In addition, there are only a finite number of public parking places in the City of Miami. In many areas, public parking space is at a premium because of an insufficient number of parking spaces available; this problem is especially acute in Downtown, the Brickell area, Government Center, Jackson Memorial Hospital, etc. This problem hurts business in the City of Miami. In DOSP's judgment, towing is necessary to protect the interest of the City of Miami in regulating the use of its streets, and in furthering public convenience and safety, which all require the prompt removal of illegally parked vehicles. The providing of a notice and hearing prior to towing an illegally parked vehicle would frustrate these interests. Imagine if someone were blocking a fire hydrant.

In responding to a well-supported Motion for Summary Judgment, Plaintiff has the burden to counter or rebut DOSP's

---

5. Plaintiff also argues that the existence of a cause of action to pursue his claim is an inadequate substitute for a hearing. However, the Eleventh Circuit has already held that when a state provides a cause of action to challenge the continued retention of property, an adequate post-deprivation remedy is available and no procedural due process violation ensues. *See Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir.1991)("[A]s long as *some* adequate post-deprivation remedy is available, no due process violation occurred.")

evidence with his own evidence. However, he has not done so.[6] Plaintiff merely proffers legal argument, instead of producing evidence that a pre-deprivation hearing is feasible.

In his Response, Plaintiff argues that an alternative pre-deprivation process is feasible in the instant case. Specifically, Plaintiff states that DOSP could employ a process similar to that used in Section 42–112 of the City of Miami Code.[7] However, Plaintiff's reliance on Section 42–112 of the City of Miami Code is misplaced.[8] After reviewing the supplemental materials provided by the parties, the distinction between private and public tows is of no consequence in this case, especially in light of the Affidavit of Maria J. Chiaro [DE # 160]. In the Affidavit of Ms. Chiaro, Ms. Chiaro states in relevant part:

4. Ordinance 12384 was adopted by the City Commission on second and final reading on July 17, 2003.

5. Section 4 of Ordinance 12384 provides, "this Ordinance shall be effective thirty (30) days after final reading and adoption thereof." Thus, Ordinance 12384, which enacted Section 42–112 of the City Code, did not become effective until August 16, 2003. Therefore, if [Plaintiff's] vehicle was towed and impounded on July 18, 2003 [as alleged in Plaintiff's First Amended Complaint, para. 12], Ordinance 12384, and Section 42–112 enacted thereby, *was not yet in effect*. (emphasis in original).

7. The origin of Section 42–112 is directly related to the settlement reached in the litigation entitled, *Robert M. Jasinski v. The City of Miami*, Case No.: 02–21572–CIV–SEITZ (hereinafter the "*Jasinski*" case)(emphasis in original)

11. In drafting the Ordinance with the provisions set out in the then "proposed" settlement agreement, I arbitrarily se-

---

**6.** In Plaintiff's Reply to DOSP's Response to Plaintiff's Motion to Take Judicial Notice, Plaintiff argues:

Miami–Dade § 30–389.4 is relevant because it refutes [Escandon's] argument by showing that the county affords scofflaws an opportunity to request a prompt post-tow hearing. More important, it is interesting to note that the ordinance provides for a post-tow hearing process similar to that approved by the Supreme Court in *David.* (Plaintiff's Reply to DOSP's Response to Plaintiff's Motion to Take Judicial Notice, 8).

However, Plaintiff's argument on this point misses the mark because Plaintiff is comparing apples and oranges. The fact that Miami–Dade County provides a procedure for dealing with scofflaws in § 30–389.4 does not in any way demonstrate that it was feasible for the City of Miami or DOSP to conduct a pre-tow hearing for every car towed after the car was determined to have been "abandoned" and/or illegally parked.

**7.** Miami Code § 42–112 provides in relevant part:

**Impoundment of a vehicle(s) by a law enforcement agency-Procedures for notice,**

**hearing process and posting of case or security bonds.**
(a) Notice. The registered owner of a vehicle impounded by a law enforcement agency shall receive notice by telephone or by mail from the towing company, pursuant to the time parameters contained herein, that a vehicle has been towed. The registered owner shall be advised of (i) the location of the vehicle, (ii) methods to redeem the vehicle, (iii) the registered owner's right to request an adversarial hearing before an administrative hearing officer to contest the validity of the tow and the imposition of fees within seven working days of receipt of the notice, and (iv) the procedure for requesting such adversarial hearing.

**8.** At oral argument, there was extended discussion regarding whether this Section applies only to cars towed by law enforcement officers from "private property." Given the title of the Section, the parties and the Court were understandably confused over the applicability of this Section to tows from public property. The Court's confusion was resolved by the supplemental briefing submitted by the parties.

lected the section number for the new Code Section designated in the City Code as Section "42–112"; the codifier did not change the section number as submitted.

12. When drafting the Ordinance, I did not have in my mind a distinction between tows from private and public property; my goal was to draft an ordinance which comported with the proposed settlement agreement.

Thus, in light of Ms. Chiaro's affidavit, Plaintiff's argument that "DOSP made no attempt to explain why it would be unduly burdensome to establish a hearing process similar to that afforded by Miami Code § 42–112" is unavailing because it is undisputed that, at the time this Plaintiff's car was towed, Miami Code § 42–112 was not yet in effect. Furthermore, there is no indication that it was the legislature's intent to have Miami Code § 42–112 to apply just to tows from private property.

Even if Miami Code § 42–112 was in effect at the time of the tow, I would have reached the same conclusion. If I would assume that Miami Code § 42–112 applies both to tows from public and private property, DOSP's failure to comply with Miami Code § 42–112 would have provided Plaintiff with a state law cause of action with a state law remedy, not a cause of action sounding in a violation of his federal due process rights. At oral argument, Plaintiff conceded that the City's failure to comply with Miami Code § 42–112 would provide him with a potential state claim.[9]

In an attempt to defeat DOSP's well-supported Motion for Summary Judgment, Plaintiff also cites to a number of cases. However, no case cited provides him with persuasive support. In particular, Plain-

tiff cites to *David v. City of Los Angeles*, 307 F.3d 1143 (9th Cir.2002). Plaintiff's reliance on *David* is misplaced. In *David*, a vehicle owner brought a 42 U.S.C. § 1983 class action against the city, alleging that the procedures the city used after the car was towed and stored for alleged parking violations did not comport with due process. In *David*, the district court granted summary judgment for the city. The vehicle owner appealed. The Ninth Circuit affirmed in part and reversed in part, and remanded. Specifically, the Ninth Circuit held that the United States Constitution required the city to provide an earlier payment-recovery hearing, perhaps within 48 hours of the towing and at least within five days. The city argued that the Ninth Circuit's holding was contrary to well-established principles of constitutional law and petitioned to United States Supreme Court. The United States Supreme Court in *City of Los Angeles v. David*, 538 U.S. 715, 123 S.Ct. 1895, 155 L.Ed.2d 946 (2003) agreed with the city and reversed and remanded the case. Specifically, the United States Supreme Court in *David* held that the city's thirty-day delay in holding a hearing did not violate federal due process. Thus, the ultimate United States Supreme Court decision in *David* provides Plaintiff with little support.

Plaintiff also relies upon Judge Kozinski's dissent in *David v. City of Los Angeles*, 307 F.3d at 1149. However, Judge Kozinski's dissent does little to support Plaintiff's position. Specifically, Plaintiff cited the following passage from that case, "If David hadn't paid the money to get his care out of hock, he could have demanded a hearing within 48 hours. Had the city

---

**9.** Also if Miami Code § 42–112 applies to tows from private and public property, Plaintiff might already have the procedural due process protection he seeks in this suit. How-

ever, Miami Code § 42–112 would only apply to tows conducted after August 16, 2003, not prior to the date of enactment.

failed to provide him a hearing within that time, David probably would have had a solid claim." In this case, the facts demonstrate that Plaintiff did not demand either a hearing, pay the bond to get his car, or file suit in the circuit court. Rather, Plaintiff sat on this rights until the day before the auction. Plaintiff further cites the following passage from *David*, "[t]he issue is different if the money is needed for living expenses. In such a case, a post-deprivation hearing-no matter how prompt-might not be adequate." In this case, there is no evidence that Plaintiff's car was used for his livelihood, just the opposite, as it appears that Plaintiff infrequently used the car.

Additionally, Plaintiff attempts to distinguish this case from the Eleventh Circuit precedent of *Carcamo* in a number of ways. First, Plaintiff argues that he, unlike the plaintiff in *Carcamo*, is indigent. However, Plaintiff has not produced any evidence into the record to support this contention. In fact, Plaintiff's own attorney stated that he has made repeated attempts to obtain Plaintiff's financial records; however, he has "not been able to persuade the plaintiff to produce the financial records that will substantiate the plaintiff's claim that he was indigent at the time of the incident in question." [DE #134]. Moreover, Plaintiff argues that this is a car case unlike *Carcamo*, and not a money case, and that the deprivation in this case was not "merely financial." While on this point this case is distinguishable from *Carcamo*, I place significant weight on the fact that Plaintiff used the car infrequently and did not depend on the car for transportation to and from work and/or for his employment. In ¶ 4 of the Affidavit of Plaintiff, Plaintiff stated, "I do not drive my care very often, however, I would check it periodically and run the engine to keep the battery charged." Thus, I conclude the facts of this case,

while not on all fours, is not significantly distinguishable from the Eleventh Circuit precedent of *Carcamo*.

The undisputed evidence in the record also indicates that the DOSP impounds thousands of illegally parked and abandoned cars each year. To require a pre-deprivation hearing in all cases would unduly burden DOSP's administrative resources and its ability to effectively enforce the parking regulations. I conclude that the interest of DOSP in enforcing parking regulations without being required to provide pre-tow notice and a hearing, outweighs the interest of Plaintiff in the temporary deprivation of the use of the vehicle until the post-tow process can be utilized. Therefore as a matter of law, I conclude it is not feasible for DOSP to provide a "pre-tow hearing" to all persons whose vehicles are towed in the city of Miami. This conclusion was also reached by a number of other courts as well. As the United States Supreme Court noted in *City of Los Angeles v. David*, 538 U.S. 715, 719, 123 S.Ct. 1895, 155 L.Ed.2d 946 (2003), a pre-tow hearing "is impossible if the city is to be able to enforce the parking rules." *See also Soffer v. City of Costa Mesa*, 798 F.2d 361, 362–63 (9th Cir.1986) (holding that plaintiff did not have a right to a pre-tow hearing); *Weinrauch v. Park City*, 751 F.2d 357, 359 (10th Cir.1984) (concluding that "[w]e agree and conclude that the City need not provide a hearing before requiring that the owner of an impounded vehicle pay the fees to recover the car."); *Breath v. Cronvich*, 729 F.2d 1006, 1010 (5th Cir.1984) (holding that "it is clear that prior notice and hearing is not required to tow illegally parked cars."); and *Sutton v. City of Milwaukee*, 672 F.2d 644, 646 (7th Cir.1982) ("[w]e hold therefore that is not violation of the due process clause to tow an illegally parked car without first giving the owner notice and an

opportunity to be heard with respect to the lawfulness of the tow.") Having concluded that a pre-tow hearing is neither required nor feasible, I now turn to the issue of whether the post-deprivation remedies offered to Plaintiff were adequate in the instant case.

### 2. Post-deprivation Hearing

My focus is limited to deciding whether the state provides an adequate post-deprivation remedy. Plaintiff argues that he was entitled to a hearing process similar to that afforded by Miami Code § 42–112, as well as that afforded to the plaintiff in *City of Los Angeles v. David*, 538 U.S. 715, 123 S.Ct. 1895, 155 L.Ed.2d 946 (2003), and that the post-deprivation remedy provided by *Fla. Stat.* § 713.78 is insufficient. (Plaintiff's Response, 2). In Response, DOSP argues that the post-deprivation procedures available to Plaintiff under *Fla. Stat.* § 713.78 provides more than adequate procedural due process protection. (DOSP's Reply, 4).

In addressing whether the post-deprivation remedy is sufficient, I must first examine *Fla. Stat.* § 713.78(5). Specifically, *Fla. Stat.* § 713.78(5) provides that the "owner of a vehicle or vessel removed pursuant to the provisions of subsection (2) ... within 10 days after the time she or he has knowledge of the location of the vehicle or vessel, may file a complaint in the county court of the county in which the vehicle or vessel is stored or in which the owner resides to determine if her or his property was wrongfully taken or withheld from her or him."

### a. Standard

■ In *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court set forth three factors for courts to consider in determining whether a post-deprivation procedure provides a plaintiff with due process protection. A court must first consider "(1)

the private interest that will be affected by the official action; (2), the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3), the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 321, 96 S.Ct. 893. "By weighing these concerns, courts can determine whether a State has set the fundamental requirement of due process-the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *City of Los Angeles v. David*, 538 U.S. 715, 123 S.Ct. 1895, 155 L.Ed.2d 946 (2003) quoting *Eldridge*, 424 U.S. at 333, 96 S.Ct. 893. Accordingly, I will analyze the post-deprivation remedy provided in *Fla. Stat.* § 713.78(5) under the three prong test set forth in *Mathews v. Eldridge*.

In his Response to DOSP's Motion for Summary Judgment, Plaintiff makes no mention of the *Mathews* factors. DOSP argues that an "[a]pplication of the *Eldridge* factors to the present matters demonstrates that the Plaintiff was provided the fundamental requirements of due process; an opportunity to be heard, at a meaningful time, and in a meaningful manner." (DOSP's Motion for Summary Judgment, 7). Having reviewed the applicable case law and record, I find no error in this argument.

### b. The Post–Deprivation Remedy Provided By Fla. Stat. § 713.78 Offers Sufficient Due Process Protection

■ As stated above, the facts as pled in this case are similar to the underlying facts of *Carcamo v. Miami Dade County* which was addressed by Judge Ungaro–Benages. In *Carcamo*, the Plaintiff's vehi-

cle was reported stolen. 284 F.Supp.2d at 1362. The vehicle was later found. *Id.* The defendant towed the vehicle after it was found. *Id.* The plaintiff was unable to secure the release of the vehicle until after she paid the towing and impoundment fees. *See Id.* at 1363. In *Carcamo*, the plaintiff argued that *Fla. Stat.* § 713.78, the same statute at issue here, violated her right to procedural due process because the statute only provided a tort action as the remedy to contest the propriety of the tow and impoundment fees, rather than a post deprivation hearing. 375 F.3d at 1105. The Eleventh Circuit rejected this argument and affirmed the analysis and holding of the district court. *Id.* at 1106. Analyzing Plaintiff's claims under *Mathews v. Eldridge,* the district court concluded that the city "did not violate Plaintiff's procedural due process rights because Plaintiff has access to an adequate post-deprivation remedy, to which she failed to avail herself." 284 F.Supp.2d at 1365.[10] Under the reasoning set forth by the district court in *Carcamo,* 284 F.Supp.2d 1362, and affirmed by the Eleventh Circuit, 375 F.3d 1104, I conclude, as a matter of law, that the post-deprivation tort remedy in *Fla. Stat.* § 713.78 provided Plaintiff in this case with an adequate post-depriva-tion remedy and did not violate Plaintiff's procedural due process rights.

In applying the first factor, Plaintiff undoubtedly has a property interest in the use of his vehicle. However as stated above, Plaintiff acknowledged, "I did not drive my car very often, however, I would check it periodically and run the engine to keep it charged." (Affidavit of Jack Barcena, ¶ 4). Moreover, Plaintiff was not deprived of ownership of the car itself by the towing, he was deprived of it only after he failed to post the $100 towing charge and avail himself of the procedures in place to recover his car. The evidence in the record indicates that Plaintiff could have paid the $100 towing charge to the circuit court and he would have received immediate access to his vehicle. Plaintiff's vehicle was recovered by Parking Specialist Buttery on July 18, 2003. (Amended Complaint, ¶ 12). On July 24, 2003, Plaintiff was sent a notice from the Miami Police Department that his vehicle, which he had previously reported as stolen, was recovered and in the possession of Molina. (Affidavit of Jack Barcena, ¶ 6). The notice provided the address and phone number for Molina. It is also undisputed that on August 1, 2003, Molina mailed a notice of a lien to Plaintiff advising him of an assessment of lien on his car (Amended

---

10. The district court in *Carcamo* found that under the first prong of the *Mathews v. Eldridge* test, the plaintiff's private interest was "purely monetary." *Id.* The district court in *Carcamo* noted that the plaintiff's "private interest is further minimized by the fact that Plaintiff could have recovered damages and costs had she challenged, with success, Defendant's tow and impoundment of her car, and the imposition of fees." *Id.* at 1366. The district court also found that the second factor of the *Mathews v. Eldridge* test favored the county. *Id.* The district court concluded that the erroneous risk of deprivation of Plaintiff's interest was "extremely slight" because the vehicle was stolen. *Id.* The district court in *Carcamo* also held that the fact that the plain-tiff would have to wait "at least 60 days for a trial on the merits" would not increase the risk of erroneous deprivation. *Id.* Lastly, the district court concluded that the third prong of test also strongly favored the county because the government had substantial justification for not providing an immediate post-deprivation hearing out of "administrative necessity." *Id.* at 1367 citing *City of Los Angeles v. David,* 538 U.S. at 718–719, 123 S.Ct. 1895. After balancing the three prongs of the *Mathews v. Eldridge* test, the district court in *Carcamo* held that the post-deprivation tort remedy in *Fla. Stat.* § 713.78 did not violate the plaintiff's due process rights "because she had access to adequate post-deprivation remedies." *Id.*

Complaint, ¶¶ 19–20), which at the time was $100.00. Molina also informed Plaintiff that his vehicle would be auctioned on September 10, 2003, if not recovered. Furthermore, it is undisputed that Plaintiff did not immediately respond to either of these notices. Instead, Plaintiff waited until September 9, 2003, one day before the auction, to complain to Molina and only then offered to tender $100 to secure release of his vehicle. (Amended Complaint, ¶ 19–20). However by September 9, 2003, the storage and towage fees assessed against Plaintiff had increased to $800. (Amended Complaint, ¶ 23). This case only became a "car case" because Plaintiff did not exercise his rights under *Fla. Stat.* § 713.78, not because *Fla. Stat.* § 713.78 provides insufficient due process protection.

Previously in responding to the Motions to Dismiss, Plaintiff alleged that he was indigent and he was unable to pay the storage fees. In its current Motion for Summary Judgment, DOSP argues, "Plaintiff cannot argue that he was financially unable to take advantage of the remedies available under § 713.78, because the records indicates that despite his claimed indigence, he had the financial ability to pay Molina $100." (DOSP's Motion for Summary Judgment, 9). I agree, because the evidence in the record does not support Plaintiff's contention that he was indigent. Specifically, Plaintiff offered Molina $100 in writing, and then subsequently went to Molina and "tendered" $100 to Orlando Molina. (Depo. of Jack Barcena, 24–26). Since Plaintiff had $100 to pay

Molina, I conclude that Plaintiff was financially able to present his notice of lien and post the $100 cash bond to the circuit court pursuant to *Fla. Stat.* § 713.78. If Plaintiff had promptly complied with *Fla. Stat.* § 713.78 and posted the $100 bond that the record shows he could have paid, he would have received his vehicle. Moreover, Plaintiff did not contact the circuit court to seek a waiver of the filing fee or bond payment and made no attempt to secure the release of his vehicle until September 9, 2003, one day before the auction. These facts indicate that Plaintiff did not take advantage of the state remedy afforded to him by *Fla. Stat.* § 713.78. Therefore, I conclude, therefore, that the first prong of the *Mathews v. Eldridge* test weighs in favor of DOSP.

The second *Mathews v. Eldridge* factor, the potential for an erroneous deprivation of property, can also be remedied by the tort action provided in *Fla. Stat.* § 713.78. If the state trial court determined that Plaintiff was indeed erroneously deprived of his property, Plaintiff could have been compensated under *Fla. Stat.* § 713.78(5)(c). If Plaintiff prevailed, and the state court could have awarded him damages, attorney's fees and costs for an improper tow. Additionally, DOSP argues that procedure set forth in *Fla. Stat.* § 713.78 satisfies any concern for accuracy and no additional procedures would have decreased the risk of erroneous deprivation because determining that Plaintiff's vehicle was in violation of the Miami–Dade County Code parking laws in question is simple and straight-forward. I concur.[11]

---

**11.** As the Seventh Circuit in *Sutton v. City of Milwaukee,* 672 F.2d 644, 646 (7th Cir.1982) stated:

The determination that a car is illegally parked is pretty cut and dried. Police officers make mistakes, of course, but in giving out parking tickets not very many-far fewer than in the case of moving violations.

Rarely would a car's owner be able to convince an impartial arbiter that his car really was not illegally parked and so should not be towed; few would be the occasions, therefore, when notice and an opportunity to be heard in advance of towing would prevent an unjust deprivation of a property interest. Since the procedural safeguard

Therefore, the potential for erroneous deprivation is insignificant here. *See Carcamo,* 284 F.Supp.2d at 1366. Even if I were to assume that additional safeguards were needed, there is no indication from the facts in the record that Plaintiff would likely have taken advantage of these added procedures.

In addressing the third factor, i.e., government's interest, DOSP argues, "the fiscal and administrative burdens that would be placed on DOSP to comply with the demands of the Plaintiff are vast." (DOSP's Motion for Summary Judgment, 11). Moreover, DOSP argues, "considerable costs, resources, and judicial time would be required to hold such hearings as contended by the Plaintiff and procure the attendance of all interested parties." *Id.* I agree and conclude that when Plaintiff's property interest in his automobile, which was used infrequently (if at all), are weighed against the interest of DOSP and the general public's welfare and interest in having available parking in the City of Miami, the procedures that Plaintiff demands in excess of *Fla. Stat.* § 713.78, are unfeasible.

Having weighted the *Eldridge* factors above, I conclude that Plaintiff was afforded more than adequate procedural due process pursuant to *Fla. Stat.* § 713.78. While Plaintiff might argue for the adoption of other processes or procedures than those currently in place, I conclude that *Fla. Stat.* § 713.78 comports with the mandates of the Fourteenth Amendment. Thus, DOSP is entitled to Summary Judgment with respect to Count I of the First Amended Complaint.

Plaintiff argues that this case is distinguishable from *Carcamo* and that *Carcamo* does not control because Plaintiff was deprived of a greater property interest than the plaintiff in *Carcamo.* Plaintiff argues that he was permanently deprived of his property, unlike the plaintiff in *Carcamo,* because he is indigent and was unable to pay the impoundment and towing fees. As I previously stated above in evaluating the pre-deprivation analysis, I find this argument to be without merit for several reasons. First, this argument was specifically rejected by the Eleventh Circuit in *Lindsey v. Storey,* 936 F.2d 554, 561 (11th Cir.1991).[12] Second, Florida law of-

---

sought here would few errors, and those of small magnitude in terms of the cost to the car's owner, the benefits of the safeguard would be very small.

12. In *Lindsey v. Storey,* 936 F.2d at 556–57 (11th Cir.1991), the police impounded a vehicle belonging to the plaintiffs. The police also impounded a large amount of cash and jewelry found in the vehicle. *Id.* The government never began forfeiture proceedings against the impounded property. *Id.* at 561. The state offered the plaintiffs a remedy of a civil cause of action for wrongful conversion to seek return of the property. *Id.* The plaintiffs never filed a cause of action for wrongful conversion or for return of the vehicle, however. *Id.* Instead, the plaintiffs filed an action for violation of procedural due process under 42 U.S.C. § 1983. *Id.* The plaintiffs argued that the government's "continued retention of their personal property—the car, cash and

jewelry—violates their procedural due process rights." *Id.* The Eleventh Circuit disagreed. *Id.* The Eleventh Circuit concluded that "[e]ven assuming the continued retention of plaintiffs' personal property is wrongful, no procedural due process violation has occurred 'if a meaningful [post-deprivation] remedy for the loss is available.'" *Id.* The Eleventh Circuit in *Lindsey* held that "as long as *some* adequate [post-deprivation] remedy is available, no due process violation has occurred." *Id.* In this case, I have already concluded that Plaintiff had access to an adequate post-deprivation remedy tort action under *Fla. Stat.* § 713.78. The fact that Plaintiff chose not to exercise this remedy, thereby resulting in the continued retention of his vehicle, does not make the impoundment of his vehicle a procedural due process violation. *See Carcamo,* 375 F.3d at 1106 ("this court has held that a judicial post-deprivation cause of action satisfies due process when the

fers indigent persons the ability to file suit without paying filing fees. *See Fla. Stat.* § 57.081. As I discussed above, Plaintiff has not produced evidence that he was indigent. However even if I were to assume that he was indigent, he had access to the courts to institute a post-deprivation tort action to challenge the towing and impounding of his vehicle. Third, as I noted above, *Fla. Stat.* § 713.78(5)(c) allows the prevailing party to recover damages, all costs and fees incurred in prosecuting the tort action. Thus, I conclude that the post-deprivation tort remedy offered under Florida law will make the prevailing party whole. Fourth, I note that Plaintiff was able to file this post-deprivation action in federal court. Plaintiff could have availed himself of the post-deprivation tort action in state court provided in *Fla. Stat.* § 713.78, yet he chose to file this action instead. As the Eleventh Circuit noted in *Carcamo*, "[w]hat appellant seems to want is a free ticket to

federal court." 375 F.3d at 1106. In this case, Plaintiff has not shown, under the test set forth in *Mathews v. Eldridge,* that he is entitled to this free ticket on procedural due process grounds. Accordingly because *Carcamo* is not significantly distinguishable, I grant DOSP's Motion for Summary Judgment on both Counts I and II because the tort action provided in *Fla. Stat.* § 713.78 comports with the requirements of procedural due process.[13]

## B. The Court Declines to Exercise its Supplemental Jurisdiction to Hear Counts IV, V, and VI

As I have concluded that no federal question jurisdiction exists in this case because Plaintiff's claims based on federal constitutional violations contained in Counts I and II of the Amended Complaint fail as a matter of law, I decline to exercise supplemental jurisdiction over the state law claims contained in Counts IV, V

private interest involved was much weightier.")

**13.** In Count II of the First Amended Complaint, Plaintiff alleges:

60. The seizure of property without prior hearing is permitted only when the following three factors are present: First, in each case the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

61. Florida Statute § 705.103 and Miami–Dade §§ 30–384 and 30–389 set forth the conditions under which vehicles may be impounded other than for evidentiary purposes or forfeiture.

62. Upon information and belief, the plaintiff's vehicle was towed pursuant to DOSP's policy and practice of impounding

abandoned vehicles without prior notice, notwithstanding the fact that they do not fall within the standardized impoundment procedures set forth in Florida Statute § 30–384 and 30–389.

Count II appears to allege an additional violation of Plaintiff's procedural due process rights based on an allegation that DOSP lacks authority to request that vehicles be impounded. DOSP argues that regardless of the Plaintiff's attempts to couch an additional due process claim under the guise of a separate count, the analysis of the *Eldridge* factors demonstrate that the Plaintiff was afforded all the process due under the Fourteenth Amendment. I find no error with DOSP's argument on this point. As I stated above, I conclude that DOSP did not violate Plaintiff's procedural due process rights because Plaintiff had access to an adequate post-deprivation remedy in *Fla. Stat.* § 713.78, but he failed to avail himself of this procedure. *Fla. Stat.* § 713.78 provides individuals like Plaintiff, more than adequate opportunity in the state courts to challenge the validity of the impoundment. For the above reasons, I conclude that Count II of the Amended Complaint fails as a matter of law.

and VI of the Amended Complaint.[14] *See* 28 U.S.C. § 1367(c)(1) and (3).

With regard to Count VI alleging conversion, this Count is not asserted against DOSP and it is a state law claim against Molina. DOSP argues that I should decline to exercise supplemental jurisdiction over Count VI. I concur. Having dismissed all of the Counts over which this Court had original jurisdiction, I lack jurisdiction to entertain Plaintiff's remaining Count against Molina, a Florida corporation whose principal place of business is in Miami–Dade County, Florida. Without any federal question jurisdiction, Defendants Molina Towing, Inc. and Orlando Molina must be dismissed from this case in the absence of diversity jurisdiction. *See Carcamo*, 284 F.Supp.2d at 1368 n. 6. Therefore, I decline to exercise supplemental jurisdiction over Counts IV, V, and VI and such Counts are DISMISSED WITHOUT PREJUDICE. *See* 28 U.S.C. § 1367(c)(3).[15]

## C. Plaintiff's Renewed Motion for Class Certification is Both Untimely and Moot

In this Court's Order dated April 11, 2006, I stated, "Plaintiff shall file a renewed Motion to Certify Class after the completion of discovery. The Motion will be considered in conjunction with any motions for summary judgment filed by the parties." [DE # 121] However, Plaintiff did not file a renewed motion to certify class following the completion of discovery, nor was one filed prior to the deadline for filing Motions for Summary Judgment.

Plaintiff filed a Renewed Motion for Class Certification on October 23, 2006. [DE # 147]. In a response to Plaintiff's Motion for Class Certification, DOSP argues that Plaintiff's Motion for Class Certification is untimely and is mooted by the fact that all of Plaintiff's claims fail as a matter of law [DE # 157]. I partially agree with DOSP on this point. As a preliminary matter, I conclude that Plaintiff's Motion for Class Certification is untimely. Even if I were to assume that the Plaintiff's Motion for Class Certification was timely filed, I would have denied the Motion in part because the Motion is partially mooted by the fact Plaintiff's underlying causes of action based on violations of his due process rights contained in Counts I and II fail as a matter of law as discussed above. With regard to Counts IV, V, and VI, because I have opted not to

---

**14.** In Count IV of the First Amended Complaint, Plaintiff alleges:

    73. Florida Statute § 713.78, provides in relevant part that wrecker operators are entitled to a lien for a reasonable towing fee and a reasonable storage fee, but only if the vehicle is towed upon instructions from: a) the vehicle owner; b) the owner or lessor of property upon which a vehicle is wrongfully parked, provided that such removal is done in compliance with F.S. 715.07; c) a law enforcement agency; or a mobile home park owner.

    74. Florida's lien statute does not authorize the imposition of a lien to secure payment of towing and storage fees when a vehicle is impounded upon instructions from an agent or employee of DOSP.

    75. Nonetheless, the defendants have a policy and practice of imposing a lien pursuant to Florida Statute § 713.78 in order to secure payment of towing and storage fees.

In Count V of the First Amended Complaint, Plaintiff alleges:

    77. The contract between DOSP and Molina Towing, Inc. provides that Molina Towing, Inc. must charge vehicle owners a $25.00 administrative fee.

    78. The imposition of an administrative fee payable to DOSP was illegal because Florida Statute § 166.201 provides that municipal fees shall be set by ordinance.

**15.** In declining to exercise supplemental jurisdiction over these Counts, I render no judgment on the merit or lack of merit of Counts IV, V, and VI.

exercise supplemental jurisdiction over such Counts, class certification over Counts IV, V, and VI is inappropriate in this venture as well. Thus, Plaintiff's Renewed Motion for Class Action Certification is DENIED in part [DE # 147].

### IV. Conclusion

For the above reasons:

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. DOSP's Motion for Summary Judgment is GRANTED in part [**DE # 128**]. Specifically, DOSP's Motion for Summary Judgment is GRANTED with regard to Counts I and II [**DE # 128**].

2. I decline to exercise supplemental jurisdiction over Counts IV, V and VI of the First Amended Compliant. Counts IV, V and VI of the First Amended Complaint are **DISMISSED WITHOUT PREJUDICE**. Specifically, Count IV against Molina is **DISMISSED WITHOUT PREJUDICE.**

3. Plaintiff's "Second Motion to Certify Class (Renewed Motion) and Memorandum of Law in Support of Class Action Certification" [**DE # 147**] is **DENIED** to the extent that such Motion seeks certification of Counts I and II of the Amended Complaint. I render no judgment on Plaintiff's ability to potentially certify Counts IV, V, and/or VI in state court.

4. Plaintiff's "Motion to Take Judicial Notice" [**DE # 156**] is **GRANTED**.

5. This case is **CLOSED** and all dates are **CANCELED**.